## BARR v. THE CITY OF KANSAS, *Appellant.*

### Division One, March 5, 1894.

1. **Practice:** SPECIAL JURY: SELECTING TALESMEN. The trial court may, under the provisions of the act of April 1, 1891 (Laws 1891, p. 172), complete a special panel by ordering that designated talesmen be summoned.

2. ———: OBJECTIONS TO EVIDENCE: MOTION TO STRIKE OUT. Where objections are made to questions propounded to a witness after they have been answered, the proper practice is to move to strike out the objectionable answers.

3. **Damages:** PERSONAL INJURIES. The plaintiff, in an action for personal injuries, may recover damages suffered up to the date of the verdict, and also such damages as will be suffered in the future; but no allowance for future damages should be made, except for such as it is reasonably certain will result from the original injury.

4. ———: ———: EVIDENCE OF PHYSICIAN. The general rule is that a physician may testify, in an action for personal injuries, as to the probable result of such injuries upon the health and life of the person injured.

5. **Practice**: PERSONAL INJURIES: EVIDENCE.   In an action for personal injuries received by falling into a sewer opening, in which an issue was presented as to whether the city had provided a reasonably safe covering for the opening, the case was properly submitted to the jury upon such issue, where the evidence tended to show that the covering was too small and three or four days before the accident fell into the sewer from the jar of a carriage passing over it.

6. **Personal Injuries**: DAMAGES: EXCESSIVE VERDICT.   A verdict for $10,000 in favor of a woman, in an action for personal injuries received when in good health, which injuries resulted in womb and spinal troubles from which she will probably never recover, is not excessive.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOYER, Judge.

AFFIRMED.

*F. F. Rozzelle, C. E. Pratt* and *J. W. S. Peters* for appellant.

(1) A city is under obligation only to keep its streets in a condition reasonably safe for persons using them with ordinary care. *Blake v. St. Louis*, 40 Mo. 569; *Brennan v. St. Louis*, 92 Mo. 487; *Maus v. Springfield*, 101 Mo. 613; *Walker v. City of Kansas*, 99 Mo. 652; *Hanniford v. Kansas City*, 103 Mo. 181. (2) A person can not rely upon the presumption that city streets are reasonably safe for his use when there is an open defect in the way that he could readily have seen had he looked. Jones on Neg. Mun. Corp., secs. 219, 241, and cases; *Chicago v. McLean*, 133 Ill. 148; *Murphy v. Railroad*, 38 Iowa, 539; *Messenger v. Pate*, 42 Iowa, 443. (3) There is a difference between a sidewalk and a street in the uses to which they are ordinarily applied. A foot passenger must exercise a greater degree of care when upon a street than when traversing a sidewalk and must be especially careful when upon a street at a point other than at a regular

crossing. *Henry v. Railroad*, 113 Mo. 536; *Roe v. City of Kansas*, 100 Mo. 193; *O'Laughlin v. Dubuque*, 42 Iowa, 539; *Houston v. Isaacs*, 3 S. W. Rep. (Texas), 693; *McClary v. Sioux City*, 3 Neb. 44. *Wood Ass'n v. Dubuque*, 30 Iowa, 176; *Girard v. Boston*, 108 Mass. 580; *Coombs v. Purrington*, 42 Maine, 332. (4) He who does what is more than ordinarily dangerous is bound to use more than ordinary care. *Morgan v. Cox*, 22 Mo. 373; *Vaughan v. Reed*, 30 Mo. 600; *Teddy v. Railroad*, 40 Mo. 506. (5) The issue of contributory negligence is for the jury upon the facts. *Barr v. City of Kansas*, 105 Mo. 558; *Maus v. Springfield*, 101 Mo. 615. (6) It is error to give instructions upon a theory which has no evidence to support it. *Bergeman v. Railroad*, 104 Mo. 90; *Norton v. Railroad*, 40 Mo. App. 447; *Gerren v. Railroad*, 60 Mo. 410; *Evans v. Railroad*, 106 Mo. 594; Thompson on Charging Jury, p. 175; *Dowling v. Allen*, 88 Mo. 293; *Edwards v. Myers*, 22 Mo. 481. (7) Questions of fact are in the first instance exclusively for the jury and an instruction which assumes the existence of facts put in issue by the pleadings is always erroneous. The court can only assume the existence of facts when they are admitted by the pleadings, or admitted at the trial. *Thompson v. Butts*, 8 Mo. 710; *Choquette v. Barrada*, 28 Mo. 491; *Dowling v. Allen*, 88 Mo. 293. (8) What constitutes "contributory negligence" should be explicitly explained by the court and a definition given thereof. *Railroad v. Enches*, 127 Penn. St. 316; 14 Am. St. Rep. 848; *Wyatt v. Railroad*, 62 Mo. 411; *Goodwin v. Railroad*, 75 Mo. 73. (9) Evidence as to probable duration or extent of injuries is not competent and damages can not be given for such probable results. 3 Sutherland on Damages, 261; *Fry v. Railroad*, 45 Iowa, 416; *White v. Railroad*, 61 Wis. 536; *Bigelow v. Railroad*, 48 Mo. App. 370; *Strohm v. Railroad*, 96 N. Y.

305; *Clark v. Land Co.*, 6 Nev. 203; Shearman and Redfield on Negligence, sec. 743. (10) Instructions should not specially call attention to isolated facts or give them undue prominence. *Barr v. City of Kansas*, 105 Mo. 559; *Shaffner v. Leary*, 21 Mo. App. 110; *Jones v. Jones*, 57 Mo. 142. (11) Damages were excessive. Jones on Neg. Mun. Corp., sec. 448, and cases cited. (12) Instruction number 2 was erroneous in informing the jury that plaintiff had the right to assume that the carriage or driveway portion of the street was safe for pedestrians. *Lynch v. Railroad*, 112 Mo. 420; *Chicago v. Morse*, 33 Ill. App. 62; *Aurora v. Hillman*, 90 Ill. 61; *Allene v. LeMars*, 71 Iowa, 654; *Raymond v. Lowell*, 6 Cush. 524; *Roe v. City of Kansas*, 100 Mo. 193. (13) The action of the court in directing the sheriff to summon certain persons to complete the special *venire* to try this cause was erroneous. Session Acts, 1891, p. 172. (14) The plaintiff was not entitled to recover under any view of the evidence. Her own testimony and the undisputed testimony of her witnesses show that she was guilty of such contributory negligence as bars a recovery. *Moxley v. Railroad*, 113 Mo. 1; *Lynch v. Railroad*, 112 Mo. 420.

*Warner, Dean & Hagerman* and *James Hagerman* for respondents.

(1) The jury was properly drawn and entirely competent. Thompson and Merriam on Juries, secs. 90, 103, 125; Proffatt on Jury Trial, sec. 73; Sess. Acts, 1891, pp. 172 to 175; *State v. Sansone*, 116 Mo. 1; *State v. Matthews*, 88 Mo. 121; *Vierling v. Co.*, 15 Mo. App. 140. (2) There was no error in the admission of evidence. Evidence as to probable duration or extent of injuries is competent, and damages may be given for such probable results. *Griswold v. Railroad*, 42 Am.

and Eng. Railroad Cases, 221 and note, p. 224; *Alberti v. Railroad*, 41 Am. and Eng. Railroad Cases, 201; *Railroad v. Falvey*, 23 Am. and Eng. Railroad Cases, 522; *Railroad v. Wright*, 33 Am. and Eng. Railroad Cases, 370; *Hanlon v. Railroad*, 104 Mo. 381; *Cunningham v. Railroad*, 49 Fed. Rep. 439; Greenleaf on Evidence, sec. 40. (3) There was no error in giving instruction number 1 for plaintiff. It was based upon the testimony in the case. (4) The court did not err in giving plaintiff's instruction number 2. *Washington v. Small*, 86 Ind. 469; *Jennings v. VanSchaick*, 108 N. Y. 530; *Barry v. Terkildsen*, 72 Cal. 254; Elliott on Roads and Streets, p. 469, *et seq.* (5) The question of plaintiff's contributory negligence was properly submitted to the jury. (6) The damages awarded were not excessive. *Porter v. Railroad*, 71 Mo. 83; *Waldhier v. Railroad*, 87 Mo. 49; *Griffith v. Railroad*, 98 Mo. 168; *Stephens v. Railroad*, 96 Mo. 215; *Furnish v. Railroad*, 13 S. W. Rep. 1048; *Railroad v. Herbert*, 116 U. S. 646; *Berg v. Railroad*, 50 Wis. 419; *Nadau v. Lumber Co.*, 76 Wis. 120; *Railroad v. Moore*, 31 Kan. 197; *Morgan v. Railroad*, 95 Cal. 501; *Chicago v. Lesseth*, 43 Ill. App. 480, affirmed, 32 N. E. Rep. 428; *Sears v. Railroad*, 33 Pac. Rep. 389; *Skottowe v. Railroad*, 30 Pac. Rep. 222; *Railroad v. Dorsey*, 66 Tex. 148; *Railroad v. Rauh*, 49 Fed. Rep. 696.

BLACK, P. J.—This case was here before, and it is reported in 105 Mo. 550. It is an action for damages for personal injuries received by the plaintiff by falling into a sewer opening. On the motion of the defendant, the circuit court ordered a special jury. The order was communicated to the clerk of the county court of Jackson county, who drew the names of forty persons from the wheel and certified the list back to the division of the circuit court in which the cause was

pending.   The jurors thus selected were summoned to
appear on the eleventh of March, 1892.   Some of the
jurors thus selected failed to appear, and the court after
waiting an hour and a half for the return of attach-
ments directed the sheriff to summon W. E. Corney and
A. L. Charles to complete the panel.   Thereupon the
defendant moved "to quash said panel" because it
being a special and not a general panel the names of
Corney and Charles were unlawfully added thereto
and because no effort was made to procure jurors from
other divisions of the court or to draw new names from
the wheel.   This motion was overruled, and of this
ruling error is assigned.

We shall treat the motion "to quash the panel"
for what it was evidently intended, that is to say, an
objection to the action of the court in itself designat-
ing the talesmen to be summoned.   The question then
is whether the court had the right to designate the
talesmen, or whether the additional jurors should have
been drawn from the wheel, or selected in some manner
other than that pursued by the court.

The act of twenty-first of April, 1891 (Acts of
1891, p. 172) makes it the duty of the county court to
cause a list of all the qualified jurors of the county to
be made out.   The names of such persons are then
written on cards and the cards placed in a wheel.   It
then provides that whenever any court "desires a panel
of jurors, or any part thereof" such court or the judge
thereof shall so order, and shall designate in the order the
number of jurors desired.   It is then made the duty of
the clerk of the county court to draw out of the wheel that
number of cards and certify the names of the persons
drawn to the court calling for the jury.   The clerk of
the court to which the list is certified is then required to
issue a writ to the proper officer commanding him to
summon the persons thus selected.   It is left to the

court calling for the jury to designate the time during which the jurors shall serve, the time to be fixed before their attendance is required.    Where, as in Jackson county, the circuit court is composed of divisions, jurors selected for one division may be used in another division, with the consent of the judge of such other division.

Section 7 provides that the name of every juror drawn for a *special venire* shall be returned to the box or wheel from which it was drawn; and section 6 is in these words:

"When a jury for the trial of a cause can not be made up from the regular panel, the judge of the court before whom the cause is pending may make out and deliver to the proper officer a list of jurors sufficient to complete the panel, but such extra jurors shall be summoned only for the trial of the particular case."

It appears very clearly from section 7 that special juries should be drawn from the wheel the same as juries ordered to serve generally for the term or some other stated period of time.    The question then is whether section 6 applies in case of special juries.    It may be observed here that courts have the power to order talesmen to be summoned in case of special juries the same as in case of common juries.    Thompson & Merriam on Juries, sec. 103; Proffatt on Jury Trial, sec. 73.    If section 6 has no application to a special or struck jury, then the court can direct the sheriff to fill up the panel.    But it is quite evident the act of 1891 was intended to furnish a system for selecting juries, full and complete in and of itself. This much can be gathered from the act taken as a whole.    Section 6 says when *a jury for the trial of a cause* can not be made up from the *regular panel*, the judge may deliver to the proper officer a list of jurors suffi-

cient to complete the panel, etc. The words *regular panel* as here used mean the panel drawn from the wheel, whether drawn for the particular case or to serve for the term or some stated time. This construction must be given to these words, if we give full force to the object and purpose of the act, and this we must do. The trial court therefore selected the talesmen in the exact manner pointed out by the act governing that court in the matter of selecting juries. The motion to quash was properly overruled.

2. The next complaint is that the court erred in allowing Dr. Foster, the plaintiff's attending physician, to testify that the injuries would *probably* shorten the plaintiff's life. This witness spoke from his own knowledge of the case. He was asked whether the injuries were of a permanent character, and he said they were, beyond doubt. *Q.* "What will be the effect upon her health the balance of her life," to which he answered, "she will, in all probability, always suffer from the injuries in various ways." *Q.* "You have not answered that part of my question as to the shortening of her life," to which he answered the probability is, the injuries will shorten her life, giving his reasons for the conclusion. *Q.* "Then it is not a case within the power of your profession to cure." *A.* "No, sir." Counsel for the defendant then objected to the testimony as to the shortening of the plaintiff's life, stating that the question should be confined to the reasonable certainty. The court overruled the objection stating that the evidence was proper, and the defendant excepted.

The objection, it will be seen, goes to the answers given by the witness rather than to the questions propounded. The objection was also made after the questions had been answered. The proper practice in such cases is to move to strike out the objectionable

statements made by the witness, but in this case the court held the evidence to be competent, and we think the objection to the evidence is before us for consideration.

The plaintiff, in these personal injury cases, may recover damages suffered up to the date of the verdict, and also such damages as will be suffered in the future, but no allowance for future damages should be made, except for such as it is reasonably certain will result from the original injury. 2 Shear. & Red. on Neg. [4 Ed.], sec. 743. The question whether future damages will, with reasonable certainty, flow from the injury is one for the jury. But it does not follow that the witness must be interrogated in language which would be proper and appropriate in an instruction. The object of the examination is to get the opinions of persons competent to express an opinion on the subject, and the different shades of opinion which the physicians may entertain, leaving it to the jury to say whether future damages are reasonably certain. Here there was evidence that the plaintiff received severe and permanent injuries to the spine and womb. In such cases the most that any physicians can say as to the effect of the injuries on the life of the injured person, however experienced or learned in his profession, is to give his opinion as to the probable consequences. An opinion being expressed, it becomes a proper subject for cross-examination, and in the end it is for the jury to determine the question as to the degree of certainty.

A number of cases have been cited on behalf of the defendant, but they relate to instructions, and are of but little aid in this case. The case of *Strohm v. Railroad*, 96 N. Y. 305, is most in point. An examination however, of that case shows that the witness was interrogated on the examination in chief as to consequences which were contingent, speculative and merely possible.

Besides, the ruling in that case has been explained and restricted by the same court in later cases. *Griswold v. Railroad,* 115 N. Y. 61; *Alberti v. Railroad,* 118 N. Y. 87. In the case last cited it was said:

"He [the physician] was then asked to state the length of time that the plaintiff may live in the natural and ordinary course of events. This was objected to and the court ruled that he might answer if he could speak with reasonable certainty in reference thereto. The doctor answered that he could only give the probability from the history of other similar cases, and this he was permitted to do under the objection and exception of defendant. It will be observed that as to the latter answer, the answer was as to the probability and that in the former question he was called upon to express his opinion in reference to the result of the disease in the *natural and ordinary course.*" After citing cases, it is said, "under the rule as laid down in these cases we consider the evidence competent." The general rule is that a physician may testify as to the probable result of personal injuries upon the health and life of the plaintiff. See notes to *Griswold v. Railroad,* 42 Am. & Eng. Railroad Cases, 223. The objection to the evidence of Dr. Foster was, therefore, properly overruled.

3. The case was submitted to the jury on two grounds of negligence of the defendant: *First,* a failure to provide a reasonably safe covering for the manhole; *second,* negligence in leaving the hole uncovered. It is now insisted on behalf of the defendant that there was no evidence of negligence in failing to provide a suitable covering, and hence the issue was improperly submitted to the jury.

The manhole leading from the surface of the street to the sewer was from five to seven feet deep. There was an iron casting on top with a grating or cover in

the opening of the casting. This grating or cover did not rest in a groove in the casting, but it rested on lugs or supports. The evidence tends to show that the grating fell down into the sewer three or four days before the accident, from the jar of a carriage which ran over it. A witness who measured the casting and the grating testified that the opening in the casting was three feet one inch in length, and one foot four inches in width. The grating was two feet, eleven and three-fourth inches in length, by one foot, three and one-fourth inches in width; thus leaving a play of three quarters of an inch in side motion, and one and a quarter inches in end motion. There were no bearings at the ends. The lugs, two on each side, were back from the ends something over a foot.

This evidence gives a perfect and complete description of the casting and the cover, and it was not necessary to call witnesses to testify in terms that the cover was too small and therefore dangerous. Had such evidence been introduced it would doubtless have been objected that it was not a proper case for expert evidence. The casting and its cover being described, it was for the jury to say whether the cover was reasonably safe. This casting and cover were placed on the surface of a street where it was subject to jars from vehicles, and the conclusion that the cover was too small or not properly supported is a reasonable one— one which the jury could draw from the evidence. There was therefore no error in submitting this issue to the jury.

4. The jury awarded the plaintiff $10,000 on the first and a like amount on the second trial, and it is now insisted that the damages are excessive. The last trial occurred four and a half years after the accident. The evidence of the plaintiff is that she was in good health before the accident, that she has not seen a well

day since that time, and that she was injured in the side and hip so that she could not walk for two years, except by the aid of a cane or heavy umbrella. Dr. Foster says he found the plaintiff unconscious, when he was called in on the day of the accident. Three ribs were broken and one limb badly bruised. The external genital organs were bruised, swollen and congested; almost black. The womb was thrown out of place so as to press upon the bladder. In a few days she complained of pains in the small of the back and back of the head, and on further examination he considered it a clear case of spinal concussion. Dr. McDowell says the case was turned over to him as the regular family physician about a month after the accident. He found serious womb trouble, from which plaintiff still suffers. He says she must have received a severe concussion of the spine, from which she has not recovered. By the consent of all parties to this suit, Dr. Griffith examined the plaintiff a few weeks before the last trial. His examination disclosed womb and spinal trouble. He says the probabilities are she will never completely recover, but he can not say certainly she will not recover.

That the plaintiff was seriously injured ought to be conceded, and there is certainly an abundance of evidence that the injuries are in some respect permanent. Injuries of the character disclosed by the evidence in this case are certainly far more serious than the loss of a limb without internal injuries. All things considered, we can not say the verdict is excessive, though large it seems to be.

5. The plaintiff's second instruction given on the first trial was modified so as to conform to the views of this court expressed on the former appeal. The other instructions are in accord with what was then said.

The judgment is affirmed.   BARCLAY, J., absent.   The other judges concur.