WILLIAM A. REDD, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 5, 1912.

1. **ASSAULT AND BATTERY: Damages: Tort of Agent: Scope of Employment.** Plaintiff sued for damages for an assault upon him by the station agent of defendant. Plaintiff ordered a car in which to ship wheat, but refused to use the one set out for him because of its condition, and went to the next station and induced the conductor of a local freight train to bring down another car. When it arrived plaintiff and de-fendant's agent got into an altercation on the depot platform concerning the use of the new car and payment for the one first ordered. Plaintiff, an old man, seventy-six years of age, used abusive language to the agent and the latter struck him, knocking him down and injuring him. *Held,* that the act of the agent was committed in the performance of the particular business entrusted to him by the master, and while acting within the scope of his authority, and the master is liable.

2. ————: **Excessive Verdict.** The verdict is not excessive under all the facts and circumstances shown in evidence.

3. ————: **Pleading: Demurrer to Petition.** The action of a trial court in overruling a demurrer to the petition cannot be raised on appeal where the defendant does not stand on the demurrer but pleads over and proceeds to trial.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*Robert F. Railey* and *Harvey C. Clark* for appellant.

The petition does not state a cause of action. Snyder v. Railroad, 60 Mo. 413; Collette v. Rebori, 107 Mo. App. 711; Hudson v. Railroad, 16 Kan. 470; Davis v. Haughtenlin, 14 L. R. A. (1 Ed.), 739; Waaler v. Railroad, 100 N. W. 1097; Seakator v. Lannon, 58 Atl. 456. (2) The defendant's demurrer to the testimony offered both at the close of plaintiff's case and at the close of the whole case should have been given. The act of the agent was not within the scope of his employment. (a) In order to make the master liable for the tortious act of his servant the act of the servant must be within the scope of his employment. It must pertain to the particular duties of such employment and be one incident to the performance of the same. Corlette v. Reberi, 107 Mo. App. 711; Camphor v. Tel. Co., 127 Mo. App. 557; Grattin v. Suedmeyer, 144 Mo. App. 714; Voegili v. Granite Co., 49 Mo. App. 645; Meade v. Railroad, 68 Mo. App. 92. (b) The master is not liable for the willful and tortious acts of his servant committed outside of the scope of his employment. An act done by the servant while engaged in the work of the master may be entirely disconnected therefrom—done not as a means or for the purpose of performing that work but solely for the accomplishment of an independent, malicious or mischievous purpose of the servant. Such act is not as a matter of fact, the act of the master in any sense and should not be declared to be so as a matter of law. Milton v. Railroad, 193 Mo. 58; Waaler v. Railroad, 100 N. W. 1097; Evers v. Krouse, 58 Atl. 181; Davis v. Haughetlin, 14 L. R. A. 739; Hudson v. Railroad, 16 Kan. 470; Williams v. Pullman Co., 3 So. 631. (c) The master is not liable for the tortious acts of his servant unless the act complained of from its nature is within the scope of his employment or is

shown either directly or inferentially to have been authorized by the master. Voegili v. Granite Co., 49 Mo. App. 645.

*Alexander Graves* and *Charles Lyons* for respondent.

(1) Defendant waived its demurrer to the evidence at the close of plaintiff's evidence, by proceeding to introduce evidence, and therefore we dismiss that point on the later decisions. Frye v. Railroad, 200 Mo. 367; Semple v. Railroad, 152 Mo. App. 22. (2) The petition states a good cause of action, and the court correctly overruled appellant's demurrer to the evidence at close of the evidence. Haehl v. Railroad, 119 Mo. 325; Camphor v. Telephone Co., 127 Mo. App. 553. (3) Retention of a servant in his employment after notice to the principal of a tort committed by the servant is evidence of the ratification of the act by the principal. Bass v. Railroad, 42 Wis. 654; Robinson v. Trans. Co., 94 Wis. 345. (4) Appellant had notice of the agent's misconduct sufficient for ratification. When it is thoroughly understood that it is not profitable to employ careless and indifferent agents, or reckless and insolvent servants, better men will take their places and not before. Goddard v. Railroad, 2 Am. Rep. 50. This case is expressly approved in Perkins v. Railroad, 55 Mo. 214; Buckley v. Knapp, 48 Mo. 162; Sedg. Meas. Dam., 520; Cleghorn v. Railroad, 56 N. Y. 44.

BROADDUS, P. J.—Assault and battery. The trial was had on the amended petition of plaintiff which charges in substance that plaintiff who resided at Dover went to Grand Pass, Missouri, for the purpose of ascertaining whether or not defendant's agent at that point had procured a car previously ordered for shipment, and while plaintiff was negotiating with such agent about the matter, that the agent committed

an assault upon his person; that it was the duty of said agent to procure a suitable car for said purpose, and that the assault was committed while he was in the exercise of such duty. The defendant moved to strike out certain parts of the original petition which the court sustained. It also filed a demurrer to the amended petition which the court overruled, to which action of the court the defendant excepted.

The plaintiff, in July, 1910, went to Grand Pass, a station on defendant's road, to buy and ship a carload of wheat at that place. He ordered a car for that purpose at that point from the defendant's agent, Williams, which was set out for him at eight o'clock on July 22, 1910. It appeared that plaintiff was not satisfied with the car the agent had selected for him and that he went back to Dover and got the conductor to bring one in its stead to Grand Pass on the morning local freight, July 24th; that he came on the local himself and got off at the water tank when the train stopped at the depot, and ran across the street but returned almost immediately to the depot; that while the agent was on the depot platform with a pencil and writing pad in his hands engaged in checking freight the difficulty began which resulted in the agent assaulting plaintiff. Plaintiff's statement of the occurrence in part is as follows: "I met him in front of the waiting roof of the depot, he had a pad and pencil in his hand, and he said to me, 'I have placed your car at eight o'clock, fill it in two days or pay the penalty, that is the rule of the road.' I said, 'I went up the road last night to the little town of Dover and heard that George Gould owned the road and that you were not even a partner.' He said, 'I gave you a car last night and you would not fill it.' I said, 'yes, you gave me a traveling privy, that kind of a car may be good enough to put stuff in if you and your kind had to eat it, but this is for decent people,' and yip, he hit me and I whirled around and fell on my hand like this, and I

was some time getting up, and as I raised up he was standing still and had anger in his eyes, and they were gleaming like a demon, and do you want to know what I told him? I said, 'you cowardly son-of-a-bitch to strike an old man, you ought to be ashamed, and I wish I had a gun to shoot you.' I said, 'you get away from here I do not want you around,' and he whirled around to strike me without the least provocation." The evidence of the agent, Williams, corroborates that of plaintiff in all important particulars to which attention will be called later on.

It appears that after the car from Dover was set out by the conductor the agent met plaintiff and insisted that he should use the car set out by him previously instead of the one obtained from Dover, and that he should fill it in two days or pay the penalty for not doing so as required by the rules of the company, and that this was the matter being discussed when the quarrel began and the agent struck plaintiff. The evidence of the agent, Williams, was in part as follows: "I was standing at the car right in front of the depot and had been unloading freight. I had some weighbills in my hand, some one was up in the car unloading it and I was taking it out when he came down. . . . He came down to me . . . from the west end of the depot. That is the first I remember. I may have seen him before, but I did not notice him before. He spoke to me first. He said, 'I got that car, sir, I understand that you are not running this road. Mr. Gould is running the road.' I told him I would not let them place it for him; that I had placed one already. He did not say where he had gotten the car. He then said, 'I will not use that car, sir, it is dirty, and not fit to use.' I told him again that I would not let them place the car they had for him as we had this car all ready placed for him at the team track and it had been four days to his credit; it was placed on the track the 22d day of July for him at eight o'clock. To

this he said, 'if you and your kind were to eat the flour made out of that wheat shipped in that car it would be all right, but it was for decent people to eat.' I do not remember exactly his words, and at the same time he was shaking his finger in my face mighty close, and the next thing he called me, there were not but a few words said, he called me a dirty puppy. About that time I struck him. I do not remember any other words. He was mad. I struck him with my fist. He did not fall. He went backwards and his hat fell off. He picked up his hat and said to me, 'you son-of-a-bitch for hitting an old man like me, I will have you arrested.' That was all that was said.''

The plaintiff testified that his eye was blackened by the blow that he received. He was asked: "How was your face, cut or disfigured?" A. "Yes, sir, my wife did not know me, that was about all." That his eye remained in that condition three or four weeks, during which time he was nervously prostrated, but that he went around however; that his health was good previously; that a doctor was then treating him for nervous prostration; that he has some miserable nights when he thinks about his injury as it disturbs his sleep. Q. "How does it affect you?" A. "It affects me terrible, you know how treatment of that kind will affect a gentleman without any provocation." Q. "Did you feel humiliated?" A. "Yes, sir, I have suffered terribly. I do not believe I will ever get over it." The plaintiff was seventy-six years of age at the time he received his injury and had been a soldier in the Confederate army. He tried to get the company to discharge the agent for the manner in which he had treated him, but the company refused to do so. He stated that he would not have brought this suit if the company had complied with his request. The jury returned a verdict for $500 actual and $1,000 for exemplary damages. Defendant appealed from the judgment.

Redd v. Railroad.

One of the reasons assigned by appellant for a reversal is, that the court erred in overruling its demurrer. The appellant is precluded from raising that question as he abandoned his demurrer by answering over. It is also insisted that defendant's objection to the introduction of any evidence on the part of plaintiff, on the ground that the petition did not state a cause of action, should have been sustained. We think the petition stated a cause of action. It set out with sufficient clearness that while plaintiff and defendant's agent were negotiating concerning the procurement of a suitable car for the transportation of his wheat, the agent, without any excuse or justification, and while he was attending to the business of the company, suddenly and without warning committed an assault and battery upon plaintiff's person. We think this was a sufficient allegation that plaintiff was assaulted by defendant's agent while he was in the performance of his duties as such. The petition may be subject to some criticism, but it contains enough virility to be good at least after judgment.

But the main point urged for a reversal and that upon which the parties have directed their principal arguments, is whether plaintiff made out a case sufficient to authorize him to recover? The rule is correctly stated by the appellant that: "In order to make the master liable for the tortious act of his servant, the act of the servant must be within the scope of his employment. It must pertain to the particular duties of such employment and be one incident to the performance of the same." And the rule is further elaborated upon as follows: "In determining the liability of the master for the tortious acts of the servant, the simple test is whether they were the acts within the scope of his employment, not wether they were done while prosecuting the master's business; but whether they were done by the agent in furtherance thereof, and were such as may fairly be said to have

been authorized by him. By authorized is not meant
authority expressly conferred, but whether the act
was such as was incident to the performance of the
duties entrusted to him by the master." From which
statements of the law we are to understand that if
the agent of the master commits a tortious or negli-
gent act while in the performance of a particular bus-
iness entrusted to him by the master he is acting with-
in the scope of his authority and in the furtherance
of the performance of his duty. We do not under-
stand that the respondent controverts this statement
of the law, and, therefore, we are relieved from the
necessity of calling attention to the books on the sub-
ject.

But the parties differ widely in their views of
the application of the law to the testimony in the case.
The appellant contends that plaintiff was not there
"for the purpose of ascertaining whether or not the
defendant's agent, Williams, had procured a car which
he had been notified in a reasonable time to procure in
which to ship the plaintiff's wheat, etc., but that his
purpose there was to upbraid and abuse the agent on
account of the car set for him a day or two previous,
and that as a result of his offensive remarks about the
matter, the two men became involved in a personal al-
tercation." But the evidence is otherwise. It is true
that plaintiff had already obtained another and differ-
ent car from that set out by the agent for him, but
that did not end the business between the plaintiff and
the agent. Notwithstanding the agent knew that plain-
tiff had obtained another car, he informed plaintiff he
would not set it out for him, and that he would have to
pay the penalty for keeping the former over time, and
furthermore, that he would have to load his grain in it,
and that he would not set out the other car plaintiff
had procured in which to ship his wheat. While these
matters were being discussed the plaintiff used the

abusive language which irritated the agent and which caused him to strike plaintiff. And this was before the agent had billed out the wheat. It is true he afterwards accepted the car plaintiff had procured at Dover, but that was only an incident of the business necessary to the shipment. It seems to us that the agent at the time he committed the tortious act was acting within the scope of his authority, that is to say, he was directing plaintiff in which one of the two cars he would be compelled to ship his wheat. It was this high-handed treatment of plaintiff that brought on the difficulty and incited the plaintiff to use the offensive language that caused the agent to strike him. The law being admitted, the undisputed facts show that the defendant's agent at the time he struck plaintiff was transacting the defendant's business with plaintiff, and was, therefore, acting within the scope of his authority and his act as such is attributable to his company.

The argument of defendant covers a large field and many authorities are cited, but the case appears to us to be one where the issue is plain and the application of the law to the facts unmistakable. The defendant criticises plaintiff's instruction 1. While perhaps it is not so full and accurate in the expressions used as it should be, it presented the case to the jury in such a manner as to be understood by the ordinary juryman. If it be admitted that it contains error, the error should be disregarded for the reason that according to all the evidence both for the plaintiff and defendant, the judgment was for the right party and should for that reason stand.

Finally, it is contended that the verdict is excessive and evidences passion and prejudice upon the part of the jury. As we have already said, the defendant's agent by his arbitrary and high-handed conduct in the transaction of defendant's business provoked the difficulty and struck an old man seventy-six

years of age, bruising his eye and thereby inflicting an injury that seriously affected his nerves. And this was not all; by his unjustifiable conduct he inflicted upon an old soldier, who was no longer able to defend himself from the blows of his adversary, the most acute sense of humiliation and disgrace. To strike so old a man, even had the agent had sufficient provocation, was a dastardly thing to do, and not to be justified in the mind of any reasonable person. And, as the defendant company, with knowledge of his act, has seen fit to retain him in its employment and thereby approved of his conduct and made it its own, it has no greater right to complain than the agent would, had the verdict been against himself. It was a case that naturally appealed to the moral sense of the jury and we do not think they exceeded the proper limit in their assessment of damages under the circumstances. Affirmed. All concur.