# C. H. DORTON, Respondent, v. KANSAS CITY RAILWAYS COMPANY, Appellant.

### Kansas City Court of Appeals, June 14, 1920.

1. **COURTS: Nunc Pro Tunc Order: Oral Evidence.** An entry *nunc pro tunc* cannot be based upon oral evidence but can be justified only upon the record showing in some way the facts authorizing such *nunc pro tunc* entry.

2. ———: ———: **Rule of Court.** Where a rule of court provides that on the sustention of a motion for a new trial, if the party having the right of appeal waives it during the term and serves notice of such fact on the opposite party the cause shall be returned to the general docket, upon the filing of an amended petition by the party having the right to appeal and an acknowledgment of service thereof by the opposite party, the cause, as a necessary consequence of the rule of court is returned to the general docket, and the court in which it was first tried has power to enter a formal order, *nunc pro tunc*, returning the cause to the general docket where there are entries and other memoranda filed upon which to base the order.

3. ———: **Jurisdiction: Entry of Formal Order Returning Cause to Assignment Division.** Under the above facts jurisdiction rests in the Assignment Division by virtue of operation of the rule of court, and the failure to make a formal order returning the cause to the general docket does not defeat the jurisdiction of the Assignment Division.

4. **MASTER AND SERVANT: Assault: Scope of Employment: Petition.** A petition which sets out facts showing that defendant's servant at the time he assaulted plaintiff was attending to the master's business, and that he did not turn aside therefrom, but in the course thereof did the injury, states a cause of action.

5. **JURIOR: Prejudice: Discretion of Trial Court.** Evidence *held* not to indicate an abuse of the trial court's discretion in refusing to sustain peremptory challenge to a juror whose brother at the time of trial was out on strike against defendant.

6. **DAMAGES: Excessive.** A verdict in the sum of $4500 actual and $1000 punitive damages for an assault committed by defendant's servant on plaintiff, an elderly man and resulting in permanent injuries, *held* not excessive.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

AFFIRMED.

*Harry G. Kyle* for respondent.

*Richard J. Higgins* and *Charles L. Carr* for appellant.

TRIMBLE, J.—The cause of action involved in this litigation grows out of an assault committed by defendant's servant upon plaintiff after the latter paid or tendered his fare and presented himself as a passenger to be carried on defendant's street car and while he was seeking, and the servant was giving, information relative to the transportation involved and bargained for. Out of the litigation thus arising, two appeals have come, which the parties, by agreement, have consolidated and submitted as one case.

Two trials were had in the circuit court of Jackson county, Missouri, one, *the first*, was had in Division No. 7, to which the cause was regularly assigned by the Assignment Division, where, at the September, 1917, term, on October 30th, plaintiff obtained a verdict and judgment for $1500. In due time defendant filed motions for new trial and in arrest which were, by said Division, sustained at the May, 1918, term, to-wit, on June 26th of that year. Upon the sustention of these motions the plaintiff did not appeal but acquiesced therein and manifested his acquiescence by filing in the Assignment Division, at the same term, to-wit, on September 6, 1918, an amended petition together with an acknowledgment of service thereof on defendant.

No formal order to return said cause from Division 7 to the Assignment Division seems to have been entered on the records of said Division No. 7.

After the filing in the Assignment Division of the amended petition, plaintiff, on September 18, 1918, also

filed a motion, and notice of motion, to list said cause for trial, said motion carrying defendant's acknowledgment of service thereof. The Assignment Division, on September 26, 1918, sustained this motion to list the cause for trial, the defendant making no objection thereto.

At the January, 1919, term, to-wit, on February 3, 1919, the defendant filed in the Assignment Division an application for change of venue from the county. Answer and counter affidavits in opposition to such change of venue were, at said term, filed in said Assignment Division by plaintiff on March 8, 1919; and at the March, 1919, term to-wit, on March 17, 1919, the Assignment Division overruled the defendant's application for change of venue from the county

At said last named term, to-wit, on March 21, 1919, in said Assignment Division, the defendant filed answer to the amended petition, and on the same date said Assignment Division assigned said cause to Division No. 1.

At the same term, and on March 24, 1919, plaintiff filed application for change of venue from the Judge of that Division and on the same day said application was sustained and the cause went on change of venue from Division No. 1 to Division No. 8; and on that day in Division 8 plaintiff filed reply.

At the same term, on March 25, 1919, said cause was tried in Division 8 resulting in a verdict and judgment for plaintiff in the sum of $4500 actual and $1000 punitive damages.

On March 29, 1919, motions for new trial and in arrest were filed, supported by affidavits, copies of court rules and all record entries in the cause made in the several Divisions.

At said March term and on May 6, 1919, plaintiff filed in Division No. 7 a motion for an order *nunc pro tunc.*

At the May term, 1919, on May 7, 1919, the hearing on the motion for a *nunc pro tunc* order was had, at

which all the foregoing facts were proved by the records duly offered in evidence, together with Rule 22 of the "Circuit Court Rules." In addition to this, oral evidence was introduced by deputy clerks and others to the effect that when a case was assigned by the Assignment Division, it was the practice to send to the latter a card notifying it of the assignment, and that in Division 7 when a case was completed in that division the card was marked "Returned to the Assignment Division;" and the deputy clerk in said Division testified that when a motion for new trial was sustained, it was his custom, without the court's order, to mark on the card the case as "Returned to the Assignment Division" and to send the papers and the card to that Division; that, after the motion for new trial was sustained in this case, that was done. It further appeared that no formal entry, minute or otherwise, was made on the record of Division 7 sending the case back to the Assignment Division, but that the papers and the card went back to the Assignment Division and were never thereafter in Division No. 7. It was further shown that at the time the amended petition was filed in the Assignment Division the papers were in that Division having been returned from Division No. 7, but the Assignment Card was lost, and it has never been found. The foregoing oral evidence was objected to by defendant.

The defendant then introduced a deputy clerk in another Division, No. 3, who testified that when the papers in a case were not in actual use in that Division they were returned to the general office; that he never returned a case to the Assignment Division unless the court made an order to that effect and that sometimes cases remained in the Division where tried and were retried therein after sustention of a motion for new trial, without sending them back to the Assignment Division for re-assignment.

The court in Division No. 7 took the motion for an order *nunc pro tunc* under advisement until June 3,

1919, of the May term of that year, when it was sustained, the court finding the various steps were taken in the cause as hereinabove stated, and finding especially that after the motions for new trial and in arrest had been sustained in Division 7, the plaintiff filed at the same term and on the 6th of September, 1918, an amended petition which was a notice to defendant that plaintiff had abandoned his right to an appeal from the order sustaining said motions and that "thereafter under the rules of the court the *only thing that remained to be done* was for this court *to order the said cause to be returned* to the Assignment Division of this court for further action." The court further found that the defendant applied for the change of venue and took the other steps hereinbefore recited, making no objection to the action of the Assignment Division and participating in the trial of the case the second time, without objection on any ground that the case was not regularly there. The court found that defendant had recognized that the said cause had been returned to said Assignment Division by proper order of this court and the court from said entries and papers doth find that it did, on the 6th day of September, 1919, . . . make an order on the clerk of this division to return said cause to the Assignment Division and the general docket and that said clerk did so return said cause to said Assignment Division and general docket, and it further appearing that through inadvertence the records of this court were not made to show said order." The court thereupon entered an order as of September 6, 1918, *nunc pro tunc*, showing the formal order returning said cause to the Assignment Division.

The defendant appealed from this order, *nunc pro tunc*, and this is one of the appeals hereinabove referred to.

After the motion for an order *nunc pro tunc* was sustained by Division No. 7 on June 3, 1919, the court in Division No. 8, wherein was pending the defendant's motions for new trial and in arrest relative to the

second trial, overruled said motions on June 21, 1919.; and defendant has appealed therefrom on the merits of the cause. This is the other appeal hereinabove referred to.

We will first dispose of the questions involved in the *nunc pro tunc* order. And in this connection it may be well to state that so far as the admission of the *oral* evidence on the motion is concerned, we cannot perceive how *reversible* error can be predicated thereon since the order shows on its face that it is based upon "the papers, memoranda and entries in this cause" and not upon said oral evidence. There is no question but that an entry *nunc pro tunc* cannot be based upon oral evidence, but can be justified only upon the record showing in some way, either from the judge's minutes, the clerk's entries, or some paper in the cause, the facts authorizing such *pro nunc tunc* entry. [Collier v. Catherine Lead Co., 208 Mo. 246, 272.] Nor can the memory of the judge himself or any one else be used as a support in any manner for an entry *nunc pro tunc*. [State v. Libby, 203 Mo. 596.]

The defendant's contention that there is no evidence of the proper character to justify the sustaining of the order, would seem to arise chiefly out of the conception entertained, though possibly not directly expressed, that there must be some minute entry or paper relating *directly and specifically in terms* to the order returning the case to the Assignment Division, else no order *nunc pro tunc* can be made. That may be true in certain instances but not in this. Rule 22 of the circuit court provides that—

"Whenever a motion for new trial of any cause is sustained, and the party who would have the right of appeal from such order, waives during the term his right of appeal and serves notice of such fact on the opposite party, said cause *shall thereupon be returned to* Hence, when in this case the motion for new trial was *the general docket* and may on five days' notice to the opposite party be included in the next setting of cases."

sustained in Division No. 7 and the plaintiff, through his amended petition served upon defendant, had waived his right of appeal, the case, under Rule 22 (which in effect is of the same force as law, at least so far as the matter here considered is concerned), went back to the Assignment Division. In other words, Division No. 7 had nothing to do but to return the case to that Division. Such result inevitably followed under the Rule 22. Or, to put it another way, the return of the case to the Assignment Division was but a *necessary consequence* of what took place as shown by the entries and papers in the case, and the court had power, *nunc pro tunc,* to supply the formal *order* to that effect even though the judge did not at the time actually enter said order. [Witten v. Robinson, 31 Mo. App. 525, 534.] The entries and papers filed in the case, most of which were binding on defendant as well as plaintiff so far as this matter is concerned, constitute ample evidence to justify the court of Division 7 in making the order. [Jones v. Hart, 60 Mo. 358; Sherwood's dissent, afterwards adopted as announcing the true rule in Lexington, etc., R. Co. v. Mockbee, 63 Mo. 348; Hansbrough v. Fudge, 80 Mo. 307; Dawson v. Waldheim, 89 Mo. App. 245, 251; Sperling v. Stubblefield, 105 Mo. App. 489, 494; Lusk v. Kansas City, etc., Grain Co., 204 S. W. 742.] The judgment sustaining the motion for an entry *nunc pro tunc* is affirmed.

As to the appeal on the merits of the case, there is this to be said:

On April 21, 1916, plaintiff, a merchant tailor and long a resident of Kansas City, went to Eighth and Walnut Streets to board a Brooklyn Avenue car to go to his home. He wanted to take an ''odd'' Brooklyn car as that was the kind that would go there. At the regular stopping place of the Brooklyn Avenue cars at Eighth and Walnut, the defendant maintained an employee whose duty it was to stand there, sell fares and help people on the cars and give information pretty much as a conductor does, except that he was on the ground at

the one place and not on the cars going from place to place.

Plaintiff stood on the sidewalk at Eighth and Walnut watching for an ''Odd'' Brooklyn Avenue car to put in its appearance, and as soon as he saw one coming, he walked out to the regular stopping place where this employee was standing and handed the man his fare. The man immediately motioned to the car to go on by. It did so, whereupon Plaintiff said: ''I came here on purpose for that odd car.'' The employee replied, ''That car does not stop here.'' Plaintiff replied, ''It surely does, I get it here every evening and have for a long while.'' The employee replied, ''It does not stop here, and furthermore, you cannot get that car. It has gone. Plaintiff replied, ''You are mistaken about it not stopping here.' Whereupon the employee called plaintiff a liar and struck him on the nose and head several times, knocking him unconscious to the ground, breaking his nose and otherwise injuring him.

Plaintiff was a man 59 years of age, had a package of clothing under one arm and the evening paper in the other hand; and according to his evidence made no motion or effort whatever to assault the employee, who was a man 34 years of age, larger and more powerful than plaintiff. They were total strangers to each other, had never met before and nothing else was discussed or considered between them, except the operation of the Brooklyn Avenue car for which plaintiff had offered his fare and was intending to take.

It is urged that Division No. 8 was without jurisdiction to hear and determine the case on its merits. This, of course, is on the theory that so long as the case remained in Division No. 7 its jurisdiction thereover was exclusive and hence no jurisdiction vested in Division No. 8 to adjudicate the case and no *waiver* of any kind or character on the part of the defendant could vest such jurisdiction in Division No. 8. No doubt jurisdiction over the case does rest in the Division to which it is assigned and remains there until the case goes elsewhere. [Title

Guaranty and Surety Co. v. Drennon, 208 S. W. 474; State ex rel. v. Ellison, 191 S. W. 49, 54-55.] And jurisdiction to adjudicate the particular case could not exist in two different divisions at one and the same time, nor could one of the litigants enable that to be done by anything in the nature of *waiver*. But the question is, where was the jurisdiction over the case ater the motion for new trial had been sustained in Division No. 7 and the plaintiff had, by filing the amended petition, acquiesced in the granting of a new trial? Clearly, under Rule 22, which as we have said has the force of law in this particular, the cause went back to the general docket or the Assignment Division. That was where the Rule (law) directed it to go. So that the returning of the case to the Assignment Division and the accompanying jurisdiction over the particular case, did not depend upon the entry on the record of a formal order transferring or returning the case there. It went there by operation of the rule and the only effect of the defendants appearing there without objection, and later participating in the second trial in Division No. 8 to which the case was sent, is perhaps to prevent the defendant from questioning jurisdiction over its person on the part of the Assignment Division and the other Division to which the case was sent. This participation, without objection, may also show that defendant recognized the case had gone back from Division No. 7 to the Assignment Division, but, of course, if the case did not, by operation of the rule, go back to the Assignment Division, but remained in Division No. 7 mere consent or waiver, perhaps, would not transfer the cause. We think the case went back by operation of the rule, and that the mere failure to enter a formal order on the records to that effect did not leave the jurisdiction in said Division No. 7. Unless, jurisdiction did remain there *despite the rule, then* clearly the Assignment Division and later Division 8, to which the Asignment Division sent the cause, had jurisdiction over both the subject-matter and the parties, for the amended petition was filed in the Assignment Division,

the defendant was served with a copy thereof and appeared there without objection. [Fox-Miller Grain Co. v. Stephens, 217 S. W. 994.]

The point that the petition states no cause of action cannot be maintained. The point made proceeds upon the theory that the only statement in the petition showing that the act of the servant is one for which the defendant can be held liable is the statement that the servant "in the course of his employment and acting in the line of his duty" struck plaintiff, etc., and this, defendant says, is a mere conclusion. But this is not all there is in the petition in that regard. It sets out all the facts, where the parties were, what they were doing and the business then being transacted in the course of which the blow was struck; and it shows that the business being attended to by the servant was that of his master's and that the servant did not *turn aside* therefrom, but *in the course* thereof, did the injury. The servant was concededly there, not only to act as a conductor would in receiving fares and assisting passengers to board cars, but to furnish information in regard to transportation to those who presented themselves, and the blows were struck not only *while* the servant was engaged in this but *as an incident* thereof. Clearly, the petition stated a cause of action and the evidence made a case to go to the jury. [Bledsoe v. West, 186 Mo. App. 460; Winston v. Lusk, 186 Mo. App. 381; Griffin v. Kansas City Railways Co., 204 S. W. 826-827; Fick v. Chicago, etc., T. Co., 68 Wis. 469; 5 Am. & Eng. Ency. of Law (5 Ed.), 490; Boutillon v. Laclede Gas Light Co., 129 S. W. 401; Moore v. Jefferson City, etc., Power Co., 146 S. W. 825.]

Complaint is made of the court's action in overruling defendant's peremptory challenge to juror White, one of the panel of eighteen. The objection to juror White, was that he had a brother who, as an employee of the defendant company, had gone, and was then, on a strike, and the juror had talked with his brother about the strike. The record shows, however, that this brother was of age, lived to himself, and managed his own affairs; that the

juror did not encourage him in the strike, did not have anything to do with it or belong to any organization that did, and that if his brother saw fit to go out on a strike it was not his (the juror's) affair. In reply to the suggestion by defendant's attorney that "You are in sympathy with your brother's actions: is that true or not?" the juror replied, "I don't know about that." His examination by the court disclosed that he had no feeling or prejudice against the defendant, would give it the same consideration as the plaintiff and would be governed entirely by the evidence, and that his brother's relations to the company would not embarrass him or sway his opinion in any way.

The trial court's discretion in such matters is, of course, reviewable and will not be deferred to when the record shows it was not exercised wisely or was abused; and it is the *facts* disclosed, and not what the juror *says* about his freedom from bias or prejudice, that should govern the court's action in the matter. In the cases where the trial court's ruling was disapproved by the appellate court, it will be observed that the record showed the juror was prejudiced or was in a situation where, from the common experience of men he naturally would be, notwithstanding his protestations of fairness and freedom from bias, of which men are most frequently wholly unconscious. But in this case, the circumstances are not of that character. Not only is the juror not in such a situation where he necesarily would be prejudiced, but the record shows he was not and also tends to show that he did not approve of his brother's course. When the assumption was made that of course he was in sympathy with his brother's actions, he replied "I don't know about that." We cannot agree with defendant that this was an evasive answer. If it was, it was the only one given by this juror in the course of a long examination. The meaning conveyed by the above answer would depend largely on the manner of giving it and the intonation of the voice. If said in one way, it meant that the juror was not in sympathy with his brother and

was not agreeing with the assumption that he was, though he did not want to openly say he was not in sympathy with his brother. The trial judge saw all of this and what he saw is indicated by his ruling. For us to disapprove it is to substitute ourselves in his place when we have had no opportunity of seeing and hearing what he saw and heard.

It was not error to permit Dr. Lothian, who had attended the plaintiff for some time and who knew his condition and injuries, to state whether or not the injuries were permanent. [Barr v. City of Kansas, 121 Mo. 22, 29; Jerome v. United Railways Co., 155 Mo. App. 202, 207; Veiss v. United Railways Co., 184 Mo. App. 30, 40.]

Plaintiff's instruction No. 1 embodied his case and directed a verdict if the jury found the issues submitted therein in favor of plaintiff. In substance, it told the jury that if they believed from the evidence that the plaintiff was at the place in question waiting for a car and asked the defendant's employee stationed there for information in regard to the Brooklyn Avenue car and while doing so the employee, without any cause, struck plaintiff and felled him to the street, and that he was injured thereby, they would find for plaintiff provided they found from the evidence that said employee was acting at the time he struck plaintiff, for and in behalf of the defendant in the line of his duty, as the agent and employee of the defendant.

We perceive no error in the instruction. The defendant's evidence concedes that the collector was its employee; that he was there, that his duty was to sell fares and give information to persons intending to board cars, and that he struck the plaintiff. The facts submitted covered the liability of the defendant. The instruction covered the case and was within that made by the pleadings and the evidence.

We canot agree with the contention that the case is not one where punitive damages can be allowed. And

as to the complaint that the verdict is excessive, we have considered the matter carefully, feeling that possibly the amount was somewhat large. And yet the record discloses that plaintiff, an elderly man, was struck on the nose, jaw and head and was felled unconscious to the street; that when struck he was standing close to the car on Walnut street, and, after being unconscious for some time came to, finding himself near the sidewalk covered with blood, with his nose broken and his head bruised. The phycician who first treated him says he was extremely nervous, his nose was broken and his face and head bruised; that he, the physician, plugged his nose so as to straighten it but that it was at the present time out of line; that there was a very decided difference in him since the injury as to nervousness which was quite discernible not only to a doctor but to anyone else; that the physician had known him intimately for years and had never seen nervousness in him prior to the injury. Another physician who treated plaintiff shortly after the injury says he found him in bad in a semiconscious condition, his face discolored and nose swollen. He had, since then, been very nervous, with enlarged pupils, and that his injuries were permanent. The evidence tends to show that plaintiff's head now (some three years after the injuries) hurts him and there is a constant ringing therein and he is afflicted with "dizzy spells" and his eyes hurt him with a kind of "flashing" before them, and he experiences difficulty in sleeping, none of which he had before the injury. A comparison of the two verdicts would throw no light on the matter since proof of the results of the injuries was greater under the facts alleged in the amended petition than under the other. We are of the opinion that we should not interfere with th amount of the verdict. [Redd v. Missouri Pacific R. Co., 143 S. W. 555; Sperry v. Hurd, 267 Mo. 628, 642.]

We are without warrant to disturb the judgment in the absence of reversible error, and consequently it must be affirmed. It is so ordered. All concur.