FRED. H. WILDMAN v. JOHN ANDERSON.

1. ELECTION PRECINCTS; *New Voting Places Established; Boundaries.* Prior to the election in November 1875, the voters in Smolan township in Saline county had voted at only one voting-place, known as "Maltby's school-house," in District No. 6. At that election two voting-places were opened, one at Maltby's and the other at "Hultman's school-house," in District No. 24. Notices of the election were sent by the sheriff to be posted up at each voting-place, and the people were generally notified by the county clerk and the township trustee that there would be two voting-places. The township trustee provided ballot-boxes for each voting-place. He assisted in organizing the election board at Hultman's school-house, and himself cast the second vote. Votes were regularly received, no illegal votes were cast, no legal votes were rejected. The election was beyond all question fairly conducted. The only objection to the canvass and counting of

these votes was in the fact that the order of the county commissioners for a second election-precinct was in these words: "That a voting precinct be and is hereby established in Smolan township, to be known as Hultman's school-house precinct," and specified no boundaries for the precinct. *Held,* That the votes cast at the voting-place at Hultman's school-house should be received and counted.

2. ELECTION BALLOTS; *Separate Pieces of Paper—One Ballot.* A ballot, where several officers are to be voted for, is not necessarily invalidated and to be rejected because consisting of two pieces of paper. And where in such case, one piece of paper contains only the titles of certain township offices and the names of the candidates therefor, and the other only the titles and names of the county offices and candidates therefor, and the voter folds the one piece of paper within the other and offers it to the judges of election as a single vote, and it is so received and deposited by them in the ballot-box, and the whole is done in good faith, and the voter a qualified elector, the vote so cast should be received and counted.

## Error from Saline District Court.

AT the general election held in and for Saline county on the 2d of November 1875, *Wildman* and *Anderson* were opposing candidates for county clerk. The county canvassers decided that *Anderson* was elected. *Wildman* instituted proceedings to contest the election before a contest court composed of H. S. Cunningham, probate judge, and Evander Light and B. J. F. Hanna, associate justices. The principal matters relied upon by *Wildman* were, first, that the board of county canvassers canvassed two returns from Smolan township, which he alleged was composed of but one election district; and second, that the judges of the election held in Solomon township counted as legal, ballots which were folded together in pairs, and voted by one person as a single ballot. The contest court, (associate justice Hanna dissenting,) held that one set of returns from Smolan township, that of the election held at "Hultman's school-house," should be rejected, which gave a plurality of the remaining votes cast, for *Wildman,* whom the contest court declared to have been the legally elected county clerk, and entered judgment in his favor. *Anderson* carried the case to the district court by petition in error, where, at the February Term 1876, the judgment of

23—17 KAS.

the contest court was reversed. Of this judgment of reversal *Wildman* complains, and brings the case here on error.

*John Foster*, and *T. F. Garver*, for plaintiff in error.

*J. G. Mohler*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This, like the case of *Baker v. Long*, just decided, (ante, p. 341,) is a contested election case, coming from the same county, and contesting an election held at the same time. The parties in this case were candidates for the office of county clerk. The canvassers awarded the office to Anderson, stating the vote for him to be 584 and for Wildman 574. The contest court decided in favor of Wildman, and its decision was reversed on error in the district court. Wildman brings the case here, and asks to have the decision of the district court reversed, and that of the contest court affirmed. The principal question arises on these facts: In November 1873, Smolan township was duly set off from adjoining townships, by the county board. The order organizing it established the township, "with a voting precinct at the school-house of district No. 24." In April 1874, certain sections were detached from Walnut, and added to Smolan township. July 20th 1874, the board made another order concerning Smolan township, to-wit, "that a voting precinct be and is hereby established in Smolan township, to be known as Hultman's school-house precinct." No other action was ever taken by the county commissioners regarding Smolan township, or election-precincts therein. As a matter of fact, the first election in Smolan township was not held at the school-house in district No. 24, but at Maltby's school-house in district No. 6, in the eastern part of the township, that being a customary voting-place prior to the organization of the township. Maltby's school-house was the only voting-place used by the electors until the election in controversy, in November 1875, when two voting-places were used, one at Maltby's, and the other at Hultman's school-house in

1. Election precincts; boundaries.

district No. 24. The only objection urged to this election, and to the use of the two voting-places, is in the fact that the county board failed to prescribe any *boundaries* to the election-precincts. The contestor did not claim that any persons not legal electors of the township voted at either voting-place, or that any one voted at both places, or that any voter was rejected at one place on the ground that he ought to have voted at the other, and so lost his vote altogether, or that there was anything wrong in the mere conduct of the election. ` And on the other hand it affirmatively appeared, that the county clerk informed the township trustee prior to the election that the county board had established a new voting-place at Hultman's school-house; that he also spoke to some of the voters of the township about it, and that the trustee went around among the people a few days before the election informing them of the fact; that he caused ballot-boxes to be provided for each voting-place; that he assisted at the organization of the election-board at Hultman's school-house, · and himself cast the second vote at that place; that the sheriff sent to each place notices of the election to be posted up as required by law, and that a large vote was polled in the township. In addition, the contestee produced before the contest court all the parties whose names appear on the poll-books of both voting-places, and offered to prove by them that they were all legal voters of the township and had voted at that election, and that their votes were cast in respect to the office of county clerk as returned to the canvassing board. Upon

Defective orders.

these facts ought the votes cast at either voting-place to be rejected? We think not. It may be conceded that the order of the county board in reference to the second precinct was defective in not giving its boundaries; that it had no binding force upon the electors of the township, and might have been ignored by them altogether. Yet it had the semblance of legal force. It was the apparent creation of a voting precinct; and having been accepted by the people, the only ones interested in the matter, and acted upon by them as though it were in all respects legal

and binding, the defects in the order cannot now be made the means of disfranchising a body of legal voters, innocent of wrong, seeking to exercise their rights of franchise, and only misled by the officers of the law. Even in organizations of a more permanent character, and exercising functions more constantly and seriously affecting the interests of the public, such for instance as townships, an acquiescence by the people may cure defects as serious as those in the order in question.

De facto organizations. Suppose a township had been attempted to be created by an order just as incomplete as this, and the people resident in the school-district in which was the school-house named — as here, "Hultman's school-district"— had proceeded to set in motion the machinery of a township organization, it would not be long before acquiescence by the community in these proceedings would put beyond question the legality of the township, and the extent of its limits. It would be impossible to state beforehand the exact length of time that the acquiescence must run before the validity would be beyond dispute. Doubtless the time would vary in different cases. But still, being a *de facto* organization, it would soon to all intents and purposes become a *de jure* organization. It could create debts which could be enforced against it. Its acts would be valid upon all within and without its boundaries. If this is true in reference to such permanent organizations, with such continuous duties and officers, how much more is it true in reference to these (so to speak) special organizations, which serve but a single purpose, and whose officers and duties expire in a single day? It may be conceded that time and place are matters of substance, and that to secure a valid election the appointed time and place must be regarded. It may also be conceded that a part of the electors have no right of their own volition to set up a separate voting-place, and insist that votes cast at such place be counted in the result. But this is no such case. The county board has unquestioned power to establish election-precincts. It attempted to create one. Its order was incomplete. But, deemed sufficient by those whose

Informality
not to defeat
election.

duty it was to carry it into effect, and by those who were to be affected by it, and actually recognized and carried into practical effect by all affected by it, it had sufficient semblance of legality and completeness to make valid the subsequent action. Our statute has this wise provision, that—

"Whenever it shall satisfactorily appear that any person has received the highest number of votes for any office, such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may not be defeated by any informality of any officer." Gen. Stat. p. 411, § 29.

Does it not. satisfactorily appear that the real will of the people was in favor of the contestee? They who voted were legal electors. They claimed and sought to exercise their right to vote. They voted at the place the officers designated. They voted in the manner prescribed by law. Why should the mistakes of any officers operate to disfranchise them? We quote with approbation the clear and forcible language of Associate Justice Hanna in dissenting from the opinion of a majority of the contest court: "It is clearly proved on this trial to the satisfaction of the undersigned, that the county commissioners in establishing the Hultman's school-house precinct, and that the county clerk, sheriff, and township trustee in giving notice to said voters of the creation of said. precinct, acted in good faith, and without any purpose or intention of fraud or wrong; and that the voters in assembling at said Hultman's school-house on election-day, and then and there voting, acted in good faith, and as they believed and had good reason to believe in strict accordance with law. If any law was violated in the holding of said election at said place, it was a violation of which said voters had no knowledge, for which they cannot properly be held responsible, and for which they should not be punished—and which could not and did not in any manner affect the general result of the election. The recognized and admitted object of elections is to obtain expressions of the will of the people.

The conceded purpose of all statute laws regulating elections, is to provide means by which a full, fair, honest and untrammeled expression of the will of the people may be obtained through the ballot-box, in the choice of officers, and for other purposes. All laws, constructions of laws, rulings or decisions, that interfere with the accomplishment of such purpose, are subversive of the foundation principles of popular government." In this matter then we see no error in the ruling of the district court.

Another question arises on these facts: In one of the precincts some of the votes cast were upon two pieces of paper, instead of one, as the statute directs. It seems that county and township tickets were both printed, that is, some tickets with only the names of the township officers and the candidates therefor, printed on them, and others having only the candidates for the county officers printed thereon. The voter folded the township ticket inside of the county ticket, and handed that to the judges as his ballot, and it was so received and placed in the ballot-box. Did this invalidate the vote of such voter? and ought the judges to have thrown out all such votes? The good faith of all parties is abundantly shown. And the vote can be rejected only by reason of the fact that it was upon two pieces of paper. There was no chance for mistake, for below the title of each office was the name of the candidate therefor —no possibility of an attempt to cast two votes for the same officer. It seems to us the provision of the statute we have heretofore quoted forbids the rejection of such a vote. Sec. 22 of the election law, Gen. Stat. p. 409, which requires certain action in case two or more ballots are found so folded together as to present the appearance of a single ballot, applies where the ballots are alike, or partially so, so as to indicate that a voter has by mistake or intentionally cast two votes for the same candidate. It is a rule in the interest of the purity of the ballot-box, and to guard against illegal votes. It should not be used as a means of disfranchising one whose vote, though upon two pieces of paper, plainly

*2. Election ballots; separate pieces of paper.*

indicates that he is casting but one vote upon each question and for each office.

The judgment of the district court will be affirmed.

All the Justices concurring.