No. 19,311.

F. F. ERHART, *Appellant,* v. THE KAW VALLEY DRAINAGE DISTRICT, etc., et al., *Appellees.*

SYLLABUS BY THE COURT.

DRAINAGE DISTRICT—*Election of Directors—Polling Places.* Under the provisions of the drainage act (Laws 1913, ch. 184, § 3) regulating the holding of elections to choose directors, the board of directors may designate as many polling places as are necessary to afford all of the qualified electors therein a reasonable opportunity to cast their votes.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed March 7, 1914. Affirmed.

*Richard J. Higgins,* of Kansas City, for the appellant.

*A. L. Berger,* of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: F. F. Erhart, who is a resident taxpayer of the Kaw Valley Drainage District, sought, by this action, to enjoin the holding of the regular election of the directors of the district, claiming that the board in providing for the election had designated more polling places than the law authorizes. The trial court denied the injunction, and Erhart appeals.

It appears that the district is over seven miles long, extending along the Kaw river through the populous part of Kansas City and outside the corporate limits to a point beyond the village of Turner, and that in the district there are more than 1500 qualified voters. On the theory that the electors of the district could not be accommodated at a single polling place, as evidenced by experience at former elections, the majority of the board, acting upon the advice of the attorney-general of the state, designated three polling places in the district and provided for the appointment of three judges and two clerks of election at each place. The case turns upon the question whether more than one polling place may be established for an election in a drainage district. There is no contention that there is an express limitation as to the number of polling places which may be provided, but it is insisted that the language of the statute implies that only one place can be created. The statute provides that: "elections to choose directors shall be conducted, the returns made and the results ascertained in the manner provided by law for general county elections," and after providing how candidates may be placed on the ticket it proceeds:

"At least five days before each election the board of directors shall appoint three judges and two clerks, and designate a place for holding the election, and shall

cause to be ascertained the names of all the taxpayers within the district and furnish a list thereof to said judges of election. Notice of the time and place of holding each election, signed by the president of the board of directors, shall be given in some newspaper published in the county and posted in a conspicuous place in the office of the board of directors at least five days before the holding thereof." (Laws 1913, ch. 184, § 3.)

It is urged that the power to designate "a place for holding the election" does not authorize the board of directors to establish several places and to appoint election boards for each place. It is also contended that the holding of an election at an authorized place is vital, and that it is just as imperative to hold the election at the place fixed as it is to hold it at the time fixed, and therefore the provision giving the board power to designate a polling place should be given a reasonably strict construction, and that so construed the board may only designate a single place. If the language of the statute expressly or by necessary implication requires that all the electors of the district must cast their votes at a single place only one polling place, of course, can be established by the board, although the lack of accommodations might result in depriving voters of an opportunity to cast their ballots. The language of the provision, however, is not prohibitive nor restrictive. Instead of imposing a mandatory limitation as to where the electors shall cast their ballots the legislature used the indefinte expression, "a place," and this was used incidentally in connection with other requirements. The board is admonished to provide some place; but it is not, in terms, confined to a single place, and as used it would seem to be no more than a requirement to provide accommodations for the electors to cast their ballots. The first consideration in the election is to obtain and give effect to the will of the majority of the voters of the district wherein each voter shall be given an opportunity to freely cast his ballot. If the pro-

vision was mandatory or peremptory in character as well as form there would be no discretion in the board as to polling places, but as an increase of the number of polling places will not defeat the legislative purpose nor vitiate the election the provision should be regarded as directory. (*Gilleland v. Schuyler*, 9 Kan. 569; *Wildman v. Anderson*, 17 Kan. 344; 15 Cyc. 318.) If there was a compelling purpose to be subserved by requiring all the voters to attend a single polling place there might be some reason to regard the expression as a limitation. No good reason, however, is seen why all the electors of a district, large and populous as it may be, should be required to vote at one place. On the other hand, it is easy to see that in some cases such restriction would deprive voters of an opportunity to express their will and would defeat the purpose for which the election was held. A drainage district may be so large that it would be utterly impossible to accommodate the voters at a single polling place, as under the statute the boundary of the county is the only limit to the extent of a district. If a district was forty miles long, and included a city with a dozen voting precincts, each of which was necessary to a full vote, and also a number of townships with one or more voting precincts in each, not an unreasonable supposition, an election there would be a farce as only a small fraction of the votes could be cast or received at one polling place. It is clear that from the extent of the district in question and the number of voters that it is not practicable to obtain a full vote at one polling place. In the absence of an explicit or compelling requirement it can not be presumed that the legislature intended a limitation that would effect such a result or would operate to hamper the casting of a full vote. Although the legislature used a word singular in form it must be

interpreted in accordance with the general rule prescribed for construing statutes, which is that:

"Words importing the singular number only may be extended to several persons or things . . . unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute." (Gen. Stat. 1909, § 9037.)

The phrase comes fairly within this rule of interpretation, and although the word is singular in form it is to be interpreted in a plural sense. At one time the legislature authorized the enforcement of tax liens against all owners whose lands had been bid in by the county and were still unredeemed by an action to be brought by the county attorney. Notwithstanding the fact that the word "action" was used in the act it was held, under the statutory rule mentioned, that the word although singular in form should be given a plural signification. (*Douglass v. Leavenworth County,* 75 Kan. 6, 88 Pac. 557.) In all the statutes governing general elections provision is made for the creation of a sufficient number of precincts so that all of the voters may have a full opportunity to vote, and nothing is found in the act in question from which it reasonably can be inferred that the legislature intended to make it impracticable or impossible to obtain a free expression of the will of the voters in the elections held in drainage districts.

The judgment of the district court is affirmed.