FLOYD J. GRIFFIN, by his next friend, GOLDIE D. SAMPLES, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals, July 8, 1918.

1. **NEGLIGENCE:** Street Railways: Newsboys. The plaintiff a newsboy, while riding on the steps of the defendant street railway with one hand holding on the upright iron handhold and newspapers underneath the other arm, was struck on the hand by the conductor, breaking his hold on the handhold and causing him to fall from the car so that a rear car or trailer passed over his leg. The plaintiff sues to recover damages received for injuries resulting from the fall. *Held*, that it is within the line of a street railway conductor's duty to eject persons from his car and it was not error for the court at plaintiff's request to instruct the jury assuming such to be the fact.

2. ———: Instructions: Compensatory Damages. Where an instruction on the measure of damages told the jury that "they shall take into consideration *in connection with all the facts in evidence* the nature and extent of his injuries," it was not erroneous on account of the use of the words in italics, as such words do not call for punitive damages.

3. ———: **Pleading and Proof: New Trial.** The petition asked for punitive as well as exemplary damages and 'the jury returned a general verdict without specifying which kind of damages they gave, whether such circumstances would constitute reversible error is not passed upon as the objection was not raised in the defendant's motion for a new trial, or in its motion in arrest of judgment.

4. **MISCONDUCT OF COUNSEL:** Objections. If the defendant objects to the conduct of plaintiff's counsel in the trial of the case and the court does not rebuke counsel on request, it cannot be reviewed on appeal unless an exception is saved.

Appeal from Jackson Circuit Court.—*Hon. Allen O. Southern*, Judge.

AFFIRMED.

*Atwood & Hill* for respondent.

*Clyde Taylor* for appellant.

BLAND, J.—On the 8th day of August, 1914, plaintiff, a ten-year-old newsboy, boarded a car of defendant's predecessor, in Kansas City, Missouri, for the purpose of selling papers to the passengers therein. It had been the practice of defendant's predecessor for two or three years before that date to permit newsboys to sell papers in this manner. plaintiff was upon the rear step with his right hand grasping an upright or vertical iron handhold. His papers were underneath his left arm. He had been there only a moment when the conductor standing in the rear vestibule took two or three steps toward him and then hit him on the hand, breaking his hold upon the iron bar and causing him to fall from the car so that a rear car or trailer passed over his leg. The leg was mangled in such a manner that it had to be amputated. At the time plaintiff boarded the car it was running at the rate of about four miles per hour but it gradually increased its speed and was going about ten miles per hour

when he was knocked off the car by the conductor. The conductor said nothing before striking plaintiff. Plaintiff testified that "he looked like he was mad. I didn't know he was going to hit me." He further stated in reply to the question "What was he mad at"? A. "Once before he told me to get off and I did. There was another newsboy there and he rolled up a paper and hit him in the back of the head." Plaintiff further testified that he did not know that this conductor was the same one who had put him off the car and that if he had known this he would not have gotten on because he was afraid of him.

In plaintiff's petition he asked for compensatory and punitive damages. He recovered a verdict and judgment in the sum of five thousand dollars and defendant has appealed.

Defendant makes the point that its demurrer to the evidence should have been sustained and that plaintiff's instruction No. 1 was erroneous. Plaintiff's instruction No. 1 did not require the jury to find that the conductor was acting within the scope of his authority at the time he struck plaintiff. Defendant urges that it was not shown that the conductor was acting within the scope of his authority and if there was any evidence to go to the jury on the subject, the question was one for it to settle and not one to be assumed in an instruction. Defendant says that the evidence does not show that the conductor gave any direction to plaintiff to get off the car before striking him and that there is nothing in the record to show why he struck him, whether in discharging a duty for the company or merely for personal spite or ill-will. Defendant urges that there was no evidence of what were the conductor's duties at the time he struct plaintiff, and that because one is employed by another there is no presumption that an act committed by the employee is done within the scope of his employment.

We believe that the evidence not only shows that the conductor was acting within the scope of his authority but that plaintiff's instruction No. 1 is not erroneous in assuming that fact. While it is true that not every servant of the defendant had a right to eject persons, whether passengers, licensees or trespassers, from the car, it is undoubtedly true that it was within the line of the duty of the conductor to do so. [Drogmund v. Met. St. Ry. Co., 122 Mo. App. l. c. 161, 162; Drolshagen v. Railroad, 186 Mo. l. c. 266.] Plaintiff having shown that the person who struck him was a conductor, the presumption is that the latter had the authority to eject persons from the car. The fact that the conductor struck plaintiff in the manner described in this evidence shows that the former intended thereby to eject plaintiff from the car, as the conductor is presumed to have known the natural consequences of his act in striking plaintiff on his hand, that is, he should have reasonably anticipated that as a result thereof plaintiff would be ejected from the car and that he would be hurt as he actually was. It will be borne in mind that defendant introduced no evidence to show that the conductor was not acting within the scope of his employment in ejecting plaintiff from the car.

We do not understand that defendant is claiming that the conductor struck plaintiff from any motive of personal spite or ill-will, but even if we assume that the conductor struck plaintiff on account of the previous trouble had with plaintiff, defendant would, nevertheless, be liable because the trouble grew out of the master's business, that is, of operating cars and ejecting persons from the cars if they were not desired on them. If there was a previous personal difficulty between the conductor and plaintiff that culminated in this assault, it grew out of matters connected with the master's business and defendant is liable for the act of the conductor in

striking plaintiff under the circumstances, even though the conductor was angry at plaintiff on account of the previous difficulty as it was shown that he was in the act of ejecting plaintiff at the time of the injury, a duty the conductor was employed to exercise. [Hellriegel v. Dunham et al., 192 Mo. App. 43.]

Defendant insists that the court erred in giving plaintiff's instruction No. 2 on the measure of damages. This instruction told the jury that in estimating plaintiff's damages "they shall take into consideration *in connection with all the facts in evidence,* the nature and extent of his injuries, if any, and whether or not they are permanent; the bodily pain," etc. (italics ours). It is the contention of defendant that the instruction is erroneous on account of it containing the words in italics, for the reason that the instruction was one intended to cover actual and not punitive damages and that by using said words the instruction also permits a recovery for punitive damages, citing in support thereof State ex rel. v. Ellison, 195 S. W. 722. In the case cited the Supreme Court had under consideration the peculiar wording of the death statute of Missouri, section 5427. Revised Statutes 1909. The instruction given in that case apparently covered, in part at least, punitive damages. The language complained of in that instruction clearly permitted the jury to take into consideration the aggravating circumstances shown in the evidence, that is, the circumstances permitting a recovery of punitive damages by calling the jury's attention to the manner in which deceased was killed, the court holding the instruction in that case to have been error, as no aggravating circumstances were pleaded or proved. The instruction in the case at bar is entirely dissimilar to the one cited. The instruction before us is clearly one for compensatory damages only and its form has been approved for that purpose. [Kelly v. Stewart, 93 Mo. App. l. c. 59.] While the petition asks for punitive as well as ex-

emplary damages and the jury returned a general verdict without specifying which kind of damages they gave, this matter was not raised either in defendant's motion for a new trial or in its motion in arrest of judgment, therefore, it cannot be urged here. [Persinger v. The Wabash St. L. & Pac. Ry. Co., 82 Mo. 1. c. 199; Sweet v. Maupin, 65 Mo. 1. c. 68.]

Defendant contends that the court erred in refusing to permit it to impeach plaintiff. This was the second trial of the case. At this trial plaintiff was asked if he had talked to the motorman about the manner in which he was injured, and he answered, "I didn't say nothing to him but he kept asking me if it wasn't me that fell off and got run over." Defendant offered to prove that plaintiff swore as follows in the former trial:

"Q. How long had you been there talking to the motorman? A. I don't know.

Q. Well, about how long? A. About two or three minutes.

Q. Two or three minutes? A. Yes, sir.

Q. Now, in that conversation with that motorman, that you have voluntarily told, what did you say to him? Didn't you say to him that you ran from the corner, at the sidewalk, and attempted to get on the car while it was running too fast, and you slipped and fell? A. No. sir.

Q. And in the same conversation didn't you tell him it was your fault? A. No, sir."

We cannot see how the matter offered tended to impeach plaintiff in any particular, for more - than one reason. It cannot be said to contradict the evidence quoted above that plaintiff gave at this trial. He stated at this trial, in effect, that he had had a conversation with the motorman but that the motorman did all the talking. This was not a denial that he had talked with the motorman and the matter

offered to impeach plaintiff did not contradict this testimony. The court did not err in excluding the evidence offered. .

Defendant complains of the conduct of plaintiff's attorney in statements made in his address to the jury. The court sustained defendant's objection to these statements. When defendant requested that plaintiff's attorney be rebuked, which was not done by the court, no objection of any kind was taken to this action of the court or any other in reference to any of these matters. Under the circumstances there is nothing before us for review. [Milliken v. Larabee, 192 S. W. 1. c. 106; Hartley v. Werner, 196 S. W. 1072.] This is not one of those extreme cases cited by defendant where an appellate court reverses a case for flagrant and highly reprehensible misconduct of counsel.

Defendant makes the point that the verdict was the result of passion, prejudice and sympathy on the part of the jury. Under this heading defendant discusses the weight of the evidence and the credibility of the witnesses. Of course, these were matters for the jury and ones that we cannot review.

The judgment is affirmed. All concur.