No. 23,435.

A. F. INGERSOLL and B. DUFFEY, *Appellees,* v. THE KANSAS STATE BANK and FRED R. FITZPATRICK, as Receiver, *Appellants.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. BANKING—*Kansas Bank No Authority to Accept Bill of Exchange Payable at Future Date.* A bank organized under the laws of this state has no authority to accept a bill of exchange payable at a future date, and if the cashier of a bank makes such an acceptance, the bank cannot be held liable thereon where it does not receive any consideration therefor and does not realize anything out of the transaction.

2. SAME—*Bank May Not Loan Its Credit.* A bank organized under the laws of this state may not loan its credit.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion on rehearing filed December 10, 1921. Former opinion reversed. (For original opinion of affirmance see 109 Kan. 534.)

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and *B. I. Litowich,* of Salina, for the appellants.
*Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: An opinion in this action was filed July 9, 1921, and is found in 109 Kan. 534. A rehearing was granted, and the cause has been rebriefed and reargued.

1. In addition to the statement of facts found in the former opinion, it is proper to state that the Kansas State Bank was incorporated and that the evidence did not show that the bank received any consideration or realized anything out of either transaction. That opinion was based on the construction given to section 556 of the General Statutes of 1915. That section does not confer authority to do anything; the first part of the section is altogether prohibitive. It prohibits certain things being done which otherwise might be done under section 514 of the General Statutes of 1915 as amended by section one of chapter 79 of the Laws of 1917, which reads:

"Any five or more persons may organize themselves into a banking corporation, and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor; and of buying and selling exchange, gold, silver, foreign coin, bullion, uncurrent money, bonds of the United States and of the state of Kansas, and bonds and warrants of cities, counties, and school districts in the state of Kansas, and state, county, city, township and school bonds issued in other states of the United States than Kansas, of loaning money on real estate, chattel and personal security, at a rate of interest not to exceed the legar rate allowed by law; of discounting negotiable notes and of notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business, of the value not to exceed one-third of the capital of such bank: *Provided,* That nothing in this section shall prohibit such bank from holding and disposing of such real estate as it may acquire through the collection of debts due to it."

In the former opinion, the court undertook to find in part of the last sentence of section 556 a recognition of authority in banks to accept bills of exchange made payable at a future date. The material part of that sentence reads:

"Any check, draft or order so certified by the duly authorized officer shall be a good and valid obligation against such bank."

This language does not recognize authority that has not been conferred. If a bank has not under some statute been given authority to accept a time bill of exchange, that authority cannot be found in the language last quoted. The authority given to banks organized under the laws of this state is found in section one of chapter 79 of the Laws of 1917. There is nothing in the language of that section that either expressly or impliedly gives to banks power to accept time bills of exchange, and such power is not necessary to carry into execution any authority there conferred on banks.

It may be safely said that "in case of an incorporated bank, the charter is a contract and furnishes the measure of the powers of the corporation, such powers being limited to those which are expressly granted by the charter and such incidental powers as are essential to the exercise of those expressly granted. A banking corporation or association formed under a general banking act possesses authority to carry on the business of banking only in the manner and with the powers specified in such act." (7 C. J. 585.) The power attempted to be exercised by the cashier of the Kansas State Bank was a dangerous one. If a bank has that power, obligations might be incurred much greater than all the resources of the bank; there would be no limit to the obligations that might be thus incurred.

In this state, the practice of accepting time bills of exchange drawn on banks has not been indulged in, nor until recently, in any of the other states. Banks have understood that they did not have power to accept bills of exchange payable at a future date unless authority to do so was expressly conferred by statute. This is not controlling on the court, but it is persuasive as being an interpretation of the authority of banks by those engaged in the banking business. The legislatures of a number of our states have recently passed laws enabling banks to accept time bills of exchange. This again is persuasive, although not at all conclusive, to show that under general banking laws, as they have heretofore existed, the legislatures have understood that banks do not have power to accept such bills of exchange unless specifically authorized to do so. It seems that there are only two cases in this country on this question, and they only remotely touch it. They are so very old that they cannot be given much weight; practically, they are of no assistance. But, this again demonstrates that the practice of accepting time bills of exchange has not existed in this country.

Recurring again to section 556, an examination of the word "certified," as used there, may assist in reaching a correct conclusion. In the former opinion, this language was used:

"There yet remains a consideration of the word 'certified' as used in this statute. In ordinary transactions it means that there are funds in the bank with which to pay the check, draft or order, on which the certification is placed, and that the instrument will be paid when presented for that purpose. The language used might be any that would say that the money is in the bank and that the check, draft or order will be paid according to its terms. The word 'accepted' written on a check by the bank on which it is drawn would probably be a good certification." (p. 536.)

The court is unable to see wherein that reasoning is faulty, but it does not determine that the word "certified" as used in the statute was intended to apply to a time bill of exchange. In 7 C. J. 705, this language is used:

"Certification of a check is an act by the proper officer of the bank recognizing it as a valid appropriation of the amount of money therein specified to the person therein named. No particular form of word is required to constitute certification, but any words or expressions intended to be an acceptance by the bank will be sufficient, although it is customary for the bank officer to write or to stamp the word 'good' or 'certified,' and mark with his signature or initials."

The same rule would apply to such a draft or order as is mentioned in the statute, but still we have nothing to make the language of the statute apply to a time bill of exchange.

The effect of accepting a bill of exchange and the effect of certifying a check may properly be considered. The acceptor of a bill of exchange engages that he will pay it according to the tenor of his acceptance. (Gen. Stat. 1915, § 6589.) By the certification of a check, a bank enters into an absolute undertaking to pay the check when it is presented. (7 C. J. 707. See, also, Magee on Banks and Banking, 3d ed., § 194, p. 320.) "Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance." (Gen. Stat. 1915, § 6715.) The liability of an acceptor of a bill of exchange is the same as the liability of a bank on a certified check, but there the parallel ceases. "Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon." (Gen. Stat. 1915, § 6716.) The drawer of a bill of exchange engages that on due presentment, the instrument will be accepted, or paid, or both, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it. (Gen. Stat. 1915, § 6588.) The indorser of a bill of exchange makes a like engagement. (Gen. Stat. 1915, § 6593.) The effect of certifying a check is not the same as the effect of accepting a bill of exchange.

Section 556 of the General Statutes of 1915 refers to checks, drafts, or orders payable on presentation and does not refer to bills of exchange payable at a future time. The bank had no authority under the law to make the acceptances of the bills of ex-

change, and because the bank did not have that authority and because it was not shown that the bank received any consideration from or realized anything out of either transaction, it is not liable thereunder.

2. What has been said disposes of this case, but there is another matter that enters into it and should be considered in determining whether the bank had the authority to make the acceptances, and that is, the effect of the acceptances on the bank. It does not appear that the bank was in any way interested in the transactions out of which the bills of exchange grew. In other words, the bank was an entire stranger to those transactions. In 14a C. J. 739, this language is used:

"Subject to the exceptions and qualifications hereinafter stated [exceptions not material here], the general rule is that no corporation has the power by any form of contract or indorsement to become a guarantor or surety or otherwise lend its credit to another person or corporation."

To the same effect is 10 Cyc. 1109; 7 R. C. L. 603; *Cattle Co. v. Loan Co.,* 65 Kan. 359, 362, 69 Pac. 332. Following this rule, the court of appeals in *Long Bros. v. Hubbard,* 6 Kan. App. 878, 883, used this language:

"Becoming surety upon undertakings is no part of the business of banks."

Under section 6589 of the General Statutes of 1915, the acceptor of an instrument becomes the principal debtor thereunder. In Magee on Banks and Banking, 3d ed., § 361, p. 690, this language is found:

"When a bank accepts a draft or bill of exchange for one of its customers, it merely lends its credit responsibility to its customers in order that he may procure the funds elsewhere."

That a bank does not have authority to do. (1 Morse on Banks and Banking, § 65; 3 R. C. L. 425; and authorities cited above.)

The plaintiffs cannot recover in this action; the demurrer to their evidence should have been sustained; judgment should have been rendered in favor of the defendants; the former opinion of this court cannot be followed; the judgment of affirmance is set aside; the judgment of the trial court is reversed; and judgment is directed to be rendered in favor of the defendants.