No. 23,842.

P. G. GRIEBEL et al., *Appellees,* v. SCHOOL DISTRICT No. 6 OF ROOKS
COUNTY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. SCHOOL DISTRICTS — *Notice of Special Meeting — Purchase of Additional
Schoolhouse Site.* A notice of a special meeting of the voters of a school
district stating that it is called for the purpose of selecting a particular site,
describing it, is not invalid because the call was limited to the proposed pur-
chase of a designated site.

2. SAME—*Vote to Purchase Additional Site for Schoolhouse—Not to Change
Schoolhouse Site.* The school district proposing to purchase the site in-
cluded within its boundaries a city of the third class and already had two
school buildings, one of which was used in part for high-school purposes,
and the people of the district desiring to acquire another site upon which to
erect another building to be used mainly for high-school purposes, voted to
make the purchase of a designated site. No action had been taken by the
district as to the future use or disposition of the old high-school building.
*Held,* that the proposed action is to be regarded as the purchase of an addi-
tional site rather than a change of site.

3. SAME—*School Districts May Acquire More Than One Schoolhouse Site.* It
is competent for a school district to acquire more than one site and erect
additional school buildings thereon where more schools are necessary in the
district, and the purchase of such additional site may be authorized by a
majority of those voting at a legally called meeting.

Appeal from Rooks district court; CHARLES I. SPARKS, judge. Opinion filed
January 7, 1922. Reversed.

*J. B. Riseley, W. K. Skinner,* both of Stockton, *Bennett R. Wheeler, S. M.
Brewster,* and *John L. Hunt,* all of Topeka, for the appellants.

*F. E. Young,* of Stockton, and *W. L. Sayers,* of Hill City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: School District No. 6 of Rooks county, which
includes Stockton, the county seat of that county, a city of the third
class, had two school buildings, and some of the citizens desired that
the district should acquire a site upon which to erect another school
building. A petition was circulated and presented to the school
board asking that a special meeting of the voters be called to con-
sider the proposition of purchasing a described tract of ground as a
site for a school building, to authorize the board to purchase it and
erect thereon a school building. In response to the petition a notice
of a special meeting was given. The purpose of the meeting as
stated in the call was to designate—

"The tract of ground in the west part of Stockton, Kansas, commonly known
as blocks A and B of McNulty's Addition to the city of Stockton, Kansas, as

an additional site for a school building and to authorize the board to acquire said site and to erect thereon a school building."

The meeting was held at the appointed time, and upon a motion for the purchase of the ground described, 198 voted in favor of the proposition and 180 against it. According to the records of the clerk a motion was then made that the vote adopting the site be made unanimous. A standing vote was taken and, none voting against the proposition, the motion was declared to be unanimously carried. On March 28, 1921, the board met and after a discussion as to the cost of the site it was decided that the board should at once purchase the block selected as an additional school site. Contracts were entered into with the owners of the site, one on April 7, 1921, one on April 11, 1921, which was signed by the owner of the third tract on April 2, 1921, in another state, and was received and signed by the officers of the school district board on April 11, 1921. On April 6, 1921, P. G. Griebel and fourteen others joined in bringing the present action of injunction. No restraining order was issued when the action was commenced, nor was any such order or injunction issued prior to the final judgment. The injunction was asked on the ground that the preliminary proceedings for the holding of the special meeting were not valid; that the proposed site is not suitable for school purposes; that there are not sufficient funds with which to purchase the site; and that the board is without authority to make a valid purchase. They therefore asked that the board be enjoined from purchasing the school site and from issuing bonds for the erection of a school building.

The answer set up the notice of the special meeting, the holding of the same, the action taken at that time and the contracts made with several parties for the purchase of the site. Certificates for the payment of the land have been issued and are in the hands of third parties.

J. C. Ruppenthal was appointed as referee. He heard the testimony and made elaborate findings of fact and law too long to be reproduced here, and many of them are not material to the questions presented on this appeal. His conclusions of law were that under the statutes relating to the purchase of school sites there was no authority to make the purchase in question, that after a site is once selected in a school district it can only be changed by a two-thirds affirmative vote of the electors present at the meeting where the value of the schoolhouse exceeds $400. He was not satisfied—at

least he said it did not clearly appear that the special meeting to select the site was legally held and acted upon by the board.

The court approved the report of the referee, held the selection of the site to be invalid, and entered a judgment permanently enjoining the school board from paying for the site, receiving deeds for the same, and also from taking possession of it, but further adjudged that the bonds voted to erect the school building were valid. In this appeal by the defendant the questions discussed are the validity of the call of the special meeting to select the site and of the proceedings of that meeting, and also whether the action taken was a change of site requiring a two-thirds majority of the legal voters of the district, or the purchase of an additional site on which to erect the school building which may be authorized by a majority of those voting on the proposition.

There is nothing substantial in the contention that the notice of the special meeting was defective and illegal. The petition for the meeting was signed by the prescribed number of legal voters, the required notice was given, the meeting was held at the time fixed in the notice and 378 voters attended and participated in the proceedings. Upon a motion for an expression of unanimity on the question there were no opposing votes. At the annual meeting held on April 12, 1921, the records of the proceedings and vote of the special meeting were approved without dissent. Aside from the presumption of regularity of the recorded proceedings the evidence shows close conformity to the requirements of the statute. The only objection suggested on this appeal is that the call for the special meeting was restricted to the selection of a particular site, describing it, instead of issuing one without limitations as to the location to be voted for. The definiteness of the proposition to be voted upon can hardly be regarded as a serious objection. Voters who did not favor the proposition were of course at liberty to vote for its rejection.

The principal contention in the case is that the action taken at the meeting should be regarded as an attempt to change a site rather than as the designation of another site for an additional school building. Plaintiffs contend and the trial court held that the proposition voted on was substantially a change of site, and that under the statute a vote of at least two-thirds of the legal voters of the district was necessary to effect the change. (Gen. Stat. 1915, § 8915.) The defendants insist that this provision has no application to school districts which need more school buildings and desire to acquire addi-

tional sites for them. The provision was enacted in 1874 when the greater part of the state was sparsely settled, and the legislature evidently intended to check the attempts of groups of citizens in country districts from changing the location of the school buildings from one location to another. It was recognized that such changes provoke heated controversies which have a disorganizing and deleterious effect, and hence the restrictions placed on such changes. Other provisions of the statute, however, show that it was not the legislative purpose to apply such restrictions to districts which find it necessary to acquire additional sites and enlarged facilities to accommodate increased school population.

The evidence and findings show that included in the school district is the city of Stockton, the county seat of Rooks county, and also considerable adjacent territory. The last census shows that in the district there are 486 persons of school age; that the district has two school buildings, one spoken of and used as the high-school building, which had been erected as an academy about thirty-five years ago on two blocks of ground, and was purchased by the district about fifteen years ago. It is not in good condition, and is not deemed to be suitable for high-school purposes. The district has also a grade-school building of six rooms, situated on a block of ground and is in reasonably good condition. The voters desiring to erect a building suitable for high-school purposes with ground sufficient for recreation and agricultural purposes initiated the proceedings in question and voted for a site comprising over seven acres. The purpose is to use the academy building, which has nine rooms used for school purposes, at least until the new building is completed, and this will necessarily take considerable time. No determination has been made by the voters of the district as to the sale of the building, and the school board has made no plans as to the disposition of it in the future. Aside from its use for high-school purposes it is used to accommodate the seventh- and eighth-grade pupils, also for domestic science classes and as a science laboratory. Whether the district will repair and use it or part of it for school purposes in case of the erection of another school building, or shall sell it is a question for the decision of the district and presumably will be decided according to the growth of the school population and the needs and financial condition of the district.

The facts show clearly enough that the proposed acquisition of a site for another building in the district cannot be treated as a change

Griebel v. School District.

of site within the meaning of section 8915 of the General Statutes. It is rather to be treated as the acquiring of an additional site. The statute has provided that school districts and boards of education of cities may procure such additional sites. In section 8917 it is provided that if a school district cannot by purchase or donation obtain a desired site it may resort to a condemnation proceeding. The provision fairly implies that a purchase for an additional site may be made, but if the desired site cannot be obtained by purchase or donation it may be condemned. In case of a condemnation under that section only one and one-half acres may be acquired by that means, but no limit is placed on the area that may be acquired by donation or purchase. Under section 9409, as amended by the Laws of 1917, ch. 273, § 1, the school district in which is located a city of the third class may acquire and appropriate as much money as may be necessary to pay for sites for school buildings, playgrounds, agricultural, industrial or athletic purposes, as well as extensions and enlargements of school buildings, and no limit is placed on the amount of ground that may be acquired for these purposes. While the purpose of the act is to authorize condemnation of ground it, in connection with other provisions, carries the implication that it is to be used only where a donation or a purchase at a reasonable price cannot be had. By section 8913, in which are enumerated the powers of school-district meetings, a district is authorized to purchase or lease a site for a schoolhouse and to build, hire or purchase such schoolhouse. By another section the board is empowered to purchase or lease a school site as shall have been designated by the voters at a district meeting. (Gen. Stat. 1915, § 8972.) While in some of these provisions the word "site" is used in the singular, it may be interpreted in a plural sense extending to several sites unless such interpretation is inconsistent with the manifest intention of the legislature. (Gen. Stat. 1915, § 10973; *Erhart v. Drainage District,* 91 Kan. 914, 139 Pac. 175.) The intent of the legislature in that respect is shown by the use of the term "sites" when authorizing the acquisition of ground by condemnation (Laws 1917, ch. 273), and also by providing that school districts may issue bonds to erect, purchase and equip one or more schoolhouses. (Gen. Stat. 1915, § 9177; Laws 1920, ch. 53. See, also, Gen. Stat. 1915, §§ 9050 and 9055.) School authorities have always proceeded on the theory that there may be more than a single schoolhouse in a district, and the

official reports which are a part of the records of the state superin-
tendent of public instruction show that 231 school districts situate
within 73 counties of the state have more than one schoolhouse.
The district mentioned in *Schenck v. School District,* 100 Kan. 389,
164 Pac. 169, which was eight miles long and five miles wide, illus-
trates the necessity for more than one school building in a district
located in different parts of it, and although the power to provide
more than one was not drawn directly in question, the authority to
build additional ones is recognized. (See, also, *Cline v. Wettstein,*
99 Kan. 404, 161 Pac. 617, 162 Pac. 271; *Wood v. School District,*
108 Kan. 1, 193 Pac. 1049.) Counsel cite *Cline v. Wettstein,* supra,
as an authority supporting the judgment in this case, but it will be
observed that while reference was made to a change of site in the
opinion the case was disposed of upon the ground that the prelimi-
nary steps for the meeting at which the challenged action was taken
did not comply with statutory requirements, and that the meeting
itself was illegal.

We conclude from the findings and undisputed evidence that the
action taken by the district at the special meeting authorizing a pur-
chase of a site for a school building was legally taken; that by that
action, and that of the school board in pursuance of the authority
given, it empowered the board to purchase an additional site, and
that under the law an additional site may be purchased by the
board when authorized by a majority of the votes in a meeting
legally called and held.

It follows that the judgment of the district court must be reversed
and the cause remanded with directions to enter judgment for the
defendants.