GEORGE S. BRIDGE ET AL., RESPONDENTS, v. WELDA STATE BANK, APPELLANT.*

Kansas City Court of Appeals. April 4, 1927.

*Corpus Juris-Cyc. References: Banks and Banking. 7CJ, section 237. p. 594. n. 94; section 240, p. 596. n. 18; section 569, p. 757, n. 52; section 570, p. 757, n. 56; Contracts. 13CJ. section 506, p. 539, n. 12; Corporations, . 14aCJ, section 2786, p. 739, n. 75; Guaranty. 28CJ. section 1, p. 886, n. 8; section 42, p. 911, n. 72; Trial, 38Cyc, p. 1515, n. 50.

*Charles M. Blackmar, Henry I. Eager, Haff, Meservey & Michaels,* of counsel, for respondents.

*Burns & White* for appellant.

ARNOLD, J.—This is an action upon an alleged contract arising out of certain transactions between plaintiffs, one M. S. Brecheisen and the defendant.

Plaintiffs, George S. Bridge and John R. Leonard are a copartnership doing business under the firm name and style of Bridge & Leonard, as commission merchants dealing in hay on the Chicago Board of Trade at Chicago, Illinois. The defendant is a banking institution, operating under the laws of the State of Kansas, located at Welda in Anderson county, in that State. It appears that four brothers, *viz.*, M. S., David, W. C. and A. A. Brecheisen, residents of Anderson county, Kansas, were engaged in buying and shipping hay to plaintiffs at Chicago, Illinois, for sale on commission; that prior to the transaction giving rise to this suit, M. S. Brecheisen, a depositor and stockholder in defendant bank, had transactions with plaintiffs in the shipment and sale of hay, but these had all been completed and accounts relative thereto closed and they do not enter into this case.

On Aug. 20, 1923, plaintiffs received from defendant bank the following letter:

"Robert Brownrigg,
"President

"David Brecheisen,                                    Chas E. Simon,
"Vice-President                                            Cashier

"Deposits of this bank are guaranteed by the bank depositors guaranty fund of the State of Kansas.
"1907
"Welda State Bank
"Capital, $10,000.00
"Surplus, $6,000.00
"Welda, Kansas, Aug. 20, 1923.

"Bridge & Leonard Hay Co.,
"Chicago, Ills.

"Gentlemen:

"The four Brecheisen brothers here, M. S. David, W. C. and A. A. are all shipping hay to you. Please honor any sight drafts they should draw on you. Should any of them overdraw, please draw sight draft back of them, with itemized statement, and our bank will guarantee that the draft will be promptly paid.

"Thanking you now for giving this matter your attention, I am,
"Yours very truly,
"CHAS. E. SIMON, Cashier."

It appears that prior to the receipt of said letter plaintiffs had not permitted overdrafts on shipments by M. S. Brecheisen. Beginning almost immediately upon receipt of this letter, M. S. Brecheisen

began shipping to plaintiffs prairie hay in carload lots for sale on commission, drawing a draft on plaintiffs with bill of lading attached. The details of these shipments are set out in a stipulation between the parties as follows:

"It is hereby stipulated and agreed by and between the parties to this cause that between August 1, 1923, and November 2, 1923, various cars of hay were shipped by one M. S. Brecheisen to plaintiffs to be sold by the latter on commission; that all of said hay was sold by plaintiffs on behalf of said Brecheisen at the fair and reasonable market price at the times in question and for the best prices obtainable for the respective amount and class of all such hay so shipped; that various drafts were drawn by said Brecheisen on plaintiffs in connection with the shipping and sale of such hay, all of which drafts were promptly paid by plaintiffs, and that the total of the four drafts drawn by plaintiffs on M. S. Brecheisen dated respectively, October 25, 1923, October 26, 1923 and November 2, 1923, in the respective amounts of $833.15, $221.75, $344.87 and $436.81, correctly represented and do represent (except for the credits hereinafter mentioned) the difference between the total amount of the drafts drawn by said Brecheisen on plaintiffs and paid by plaintiffs and the net amount realized from the sales of his said hay: that the draft drawn by plaintiffs on M. S. Brecheisen dated August 27, 1924, in the amount of $1880.58 correctly represented the sum of said four drafts previously drawn by plaintiffs on said M. S. Brecheisen less certain credits which had accrued in the meantime on account of claims collected from various railroads, with interest figured at six per cent per annum on the amount claimed to be due plaintiffs and interest also figured at the same rate on all credits to August 27, 1924; that the face amount of said last-mentioned draft, to-wit: $1880.58, represented the net amount claimed to be due plaintiffs at the date thereof on account of the sales of said hay; that additional credits have accrued since August 27, 1924, on account of claims collected from railroad companies in the amounts of $2.45 as of May 15, 1925, and $93.92 as of October 29, 1924; that if defendant is liable to plaintiffs by reason of the matters and things set up in this cause, for the entire difference between the total amount of the drafts drawn by said M. S. Brecheisen on plaintiffs and paid by plaintiffs, and the net amount realized from the sales of said hay, then defendant is indebted to plaintiffs in the sum of $1880.58, with interest at six per cent per annum from August 27, 1924, less the two last-mentioned credits, with interest thereon; but nothing herein contained shall be construed as a waiver of any right defendant may have to contend that it is not liable to plaintiffs for the amount of any one or more of the drafts mentioned herein."

It further appears that the four drafts dated the 25th, 26th and 29th of October and the 2d of November, in the respective amounts mentioned in the stipulation, were sent to the Welda State Bank for collection, and in each instance they were returned marked "payment refused by drawee." These drafts were marked "no protest" and in fact were not protested.

It appears that by the terms of another stipulation between the parties that on August 27, 1924, a draft in the sum of $1880.58 was drawn by plaintiffs on M. S. Brecheisen at sight, payable to the order of the National Bank of Commerce, Garnett, Kans. This draft, accompanied by a statement of account, was presented for payment to M. S. Brecheisen at Welda, Kansas, and demand made on September 1, 1924. Payment was refused, the reason assigned by drawee being that the amount was incorrect and that he did not owe the drawer thereof anything. On the day of the presentation of the draft to drawee, the defendant bank was notified of the nonpayment of the draft and demand was made on the bank and its cashier, Charles E. Simon, for payment of the same which was refused, and the draft was duly protested.

The parties hereto agreed that the statement attached to the stipulation was a correct showing of the manner of arriving at the amount of the draft. This statement is not here set out as there is no dispute as to its being a true copy of the statement which accompanied the draft. Payment of the draft having been refused by defendant bank, this suit was instituted to recover.

The petition charges the necessary formal matters, sets out the items composing the amount of the draft for $1880.58, the presentation and nonpayment of the draft, pleads the letter upon which this suit is based and attaches said letter as an exhibit. Judgment is sought in the sum of $1880.58 with six per cent interest from August 27, 1924.

The answer admits defendant is a banking corporation as alleged, pleads sections 101 and 117, chapter 9, Revised Statutes of Kansas, 1923, and also pleads the case of Ingersoll et al. v. Kansas State Bank, 110 Kans. 122; alleges the letter sued on was *ultra vires,* not having been authorized by the defendant bank, nor by its board of directors; that it was written by the cashier of said defendant, wholly without authority from the board of directors and was without consideration; that said alleged agreement or contract is contrary to section 101, Revised Statutes of Kansas, 1923, and to the holding of the Supreme Court of Kansas in Ingersoll v. Bank, supra; that the contract sued on is a guaranty for said M. S. Brecheisen and was the loan of defendant's credit to him; that at the time said letter was written and at the time the drafts were drawn said Brecheisen owed defend-

ant bank $2400; that he did not have sufficient funds to his credit in defendant bank to meet said drafts and that the payment of said drafts by defendant would have increased the loans of defendant Brecheisen to more than fifteen per cent of capital stock and surplus of defendant, in violation of the provisions of section 117, chapter 9, Revised Statutes of Kansas, 1923.

The answer further denies defendant's liability upon the grounds that plaintiffs had not complied with the terms and conditions set forth in the instrument sued on, in that plaintiffs did not draw sight drafts back on M. S. Brecheisen, with itemized statement attached; that plaintiffs have never furnished defendant an itemized statement of account between plaintiffs and Brecheisen; and that plaintiffs further violated the terms and conditions of said letter in that no draft was drawn upon said Brecheisen through general banking channels within a reasonable time after the alleged indebtedness arose. The answer also includes a general denial.

The reply is, first, a general denial and plaintiffs specifically plead that the letter upon which the suit is based was not *ultra vires* and defendant is estopped from asserting that it was, for the reason that the said contract was in good faith fully performed by plaintiffs; and, relying thereon, plaintiffs acted to their detriment in permitting Brecheisen to overdraw; that at the time said letter was written, and at all times since, said Brecheisen has been a depositor, stockholder and director of defendant bank and that since writing said letter defendant has made various loans to said Brecheisen; that at the time the letter was written defendant desired to retain the business and good will of Brecheisen and thereby has received valuable consideration for the contract; that defendant has a remedy over and against said Brecheisen for reimbursement for any liability sustained in this action; that, for the making of the contract herein defendant has received from Brecheisen certain security which will prevent it from any liability sustained in this action.

The reply pleads certain decisions by the Supreme Court of Kansas which we need not here enumerate; denies there would have been created an excess of liability if defendant had paid the drafts, avers that the alleged contract between plaintiffs and defendant was based upon sufficient consideration, and that the making of said contract did not constitute a loan to Brecheisen within the meaning of section 9-117, Revised Statutes 1923. Plaintiffs further state defendant is estopped from the defense of *ultra vires*, or that the payments of the drafts in question would have constituted an excess liability on the part of Brecheisen within the meaning of the laws of the State of Kansas. Further, the reply asserts that the writer of the letter of August 20, 1923, acted within his authority, agency and employment

592

is so doing and that his said act was ratified by defendant and acquiesced in by defendant over a long period of time, and that defendant is estopped from denying the authority of its cashier to make said contract; and that plaintiffs have complied with all the terms and conditions of said contract.

The cause was tried to a jury, resulting in a verdict for plaintiffs in the sum of $1919.23. Motions for a new trial and in arrest were overruled and defendant appeals.

The first charge of error is directed to the refusal of the court to sustain defendant's peremptory instruction tendered at the close of all the evidence. Defendant urges the contract sued on was *ultra vires* and that the letter must be construed as a guaranty. Plaintiffs take the position that the contract was a letter of credit, or a letter asking a line of credit. We think the determination of this appeal rests upon the proper construction of the letter in question and the solution of that question will determine all other points raised.

Section 101, chapter 9, Revised Statutes of Kansas, 1923, is as follows:—

"Incorporations and Powers of Banks. Any five or more persons may organize themselves into a banking corporation and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor; and of buying and selling exchange, gold, silver, foreign coin, bullion, uncurrent money, bonds of the United States, and of the State of Kansas, and bonds and warrants of cities, counties, and school districts in the State of Kansas, and the State, county, city, township and school bonds issued in other States, of the United States than Kansas, of loaning money on real estate, chattel and personal security, at a rate of interest not to exceed the legal rate allowed by law; of discounting negotiable notes and of notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business, of the value not to exceed one-half of the capital and surplus of such bank; Provided, that nothing in this section shall prohibit such bank from holding and disposing of such real estate as it may acquire through the collection of debts due it."

This statute has been construed by the Supreme Court of Kansas in the case of Ingersoll et al. v. Kansas State Bank et al., 110 Kans. 122. In that case, page 124, the court said:

"A banking corporation or association formed under a general banking act possesses authority to carry on the business of banking only in the manner and with the powers specified in such act."

In 14a C. J. 739, the general rule applicable hereto, is stated as follows:

"Subject to the exceptions and qualifications hereinafter stated (exceptions not material here) the general rule is that no corporation has the power by any form of contract or indorsement to become a guarantor or surety or otherwise lend its credit to another person or corporation."

This rule has been applied by the Supreme Court of Kansas in numerous decisions (Harris v. Gas Co., 76 Kans. 750) and the same rule applies in Missouri. [McCormick & Co. v. Bank (Mo.), 263 S. W. 152.]

But plaintiffs insist that the instrument sued on is a letter of credit and not a guaranty. The letter itself uses the word "guarantee" and defendant bases its contention largely on this fact, insisting upon a strict construction of the word, while plaintiff urges the letter must be construed as a letter of credit, or a request for a line of credit. We find a counterpart of this situation in the case of Border National Bank v. American National Bank, 282 Fed. 73 (C. C. A. 5th Cir.; *certiorari* denied, 260 U. S. 701, 732). In that case the instrument involved was a telegram, as follows:

"We guarantee irrevocably payment for account Joseph De Bona covering purchase two hundred long tons Orient white sugar. . . ."

On the strength of the telegram the draft was paid and suit was brought to recover from the author of the telegram. The defendant, as in this case, set up the plea that the transaction was an accommodation on its part, without security or consideration, and that the telegram constituted a guaranty. There was a directed verdict for the plaintiff and on appeal the judgment was affirmed. At page 77, the court say:

"A guaranty is a promise to answer for the payment of some debt, or the performance of some obligation, in case of the default of another person, who is in the first instance liable for such payment or performance. A letter of credit confers authority upon the person to whom it is addressed to advance money or furnish goods on the credit of the writer. [Daniel on Negotiable Instruments (6 Ed.) sections 1752, 1790; 12 R. C. L. 1053, 1065.] It is well settled that the guaranty of a national bank is *ultra vires*. [3 R. C. L. 425.] But a national bank is bound by its letter of credit. [Decatur Bank v. St. Louis Bank, 21 Wall, 294, 22 L. Ed. 560.]"

That opinion further states, in effect, that if the communication contained nothing to limit, qualify or explain its meaning, the word guarantee might reasonably be construed to imply a promise to pay the debt in the event the party in whose interest the communication was issued failed to do so. "But to ignore the circumstances in which it was used is to attach too much importance to it."

The word guarantee is frequently employed in business transactions which do not provide for securing the promise or debt of another,

but to express an original, primary obligation. The promise in which the word appears is to be construed in the light of the circumstances and evidence as a whole. It is the general rule that a construction which renders the contract valid is to be preferred to one that renders it void. [2 Williston on Contracts, sec. 620.]

And we conclude that the letter of defendant, tested by its terms and by the intention of the parties, as shown by the circumstances preceding and surrounding it, is not a guaranty but is a direct, independent promise and constitutes in legal effect a letter of credit, and that plaintiffs' position in this respect is proper. The court and jury apparently took this view and we find substantial evidence in support thereof. There is no evidence of record tending to prove that plaintiff knew or had reason to suspect that defendant made its promise without first requiring security from Brecheisen, or that the promise was without consideration. Without such a showing the instrument must be held to be in the nature of a letter of credit.

A letter of credit is not required to be couched in any particular words, or in any specific form. It is well known that on the face of a formal letter of credit there is seldom anything disclosing that the bank issuing it is secured from loss thereunder. The same is true of the certification of a check by a bank. [Thompson v. Bank, 146 U. S. 240.] The fact that defendant derived no benefit from its promise constitutes no defense to liability on a letter of credit. In the case of the Second National Bank of Hoboken v. Trust Co., 288 Fed. 17, l. c. 20, the court say:

"A letter of credit is a letter authorizing one person to pay money or extend credit to another on the credit of the writer. A letter of credit may also be defined as: 'A letter of request whereby one person requests some other person to advance money or give credit to a third person, and promises that he will repay or *guarantee* the same to the person making the advancement.' . . . But a letter of credit does not have to be in a particular form, if it is such in effect and intention . . . . and in effect is a guaranty."

That the cashier of defendant bank, as such, had authority to issue letters of credit is not disputed, and, having found that the letter in question, in effect, was a letter of credit and not a guaranty, the rule of *ultra vires* does not apply. The case of McCornick v. Bank, already cited, is directly in point on this question. We have examined the Kansas cases cited by defendant and find them not at variance with the general law. We hold the court did not err in refusing defendant's instruction in the nature of a demurrer at the close of the evidence.

It is urged the court erred in giving plaintiffs' instruction No. 2 which purports to cover the whole case and instructs as to the measure

of damages. The objection is that the instruction should have covered all features of the case and that it ignores the question as to whether or not the cashier was asking within his authority in issuing the letter, and also ignores the question of consideration.

We think this position untenable. While the objection embraces the idea that the instruction ignores the cashier's authority to issue the letter,—a question raised in the answer—yet, since we find the jury determined that the instrument sued on was a letter of credit, it may be conceded the authority to issue such letter lies within the powers and duties of the cashier. The record discloses no dispute as to the facts relative to this point and under these circumstances it would have been error to submit the matter to the jury. The same is true as to the question of consideration, there being no dispute as to the facts. [Griffin v. Ry. Co., 199 Mo. App. 682, 204 S. W. 826; Buehler v. Paint & Glass Co., 231 S. W. 283; Ryan v. Board of Publication, 199 S. W. (St. L. App.) 1030.] This holding is in line with State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984.

It is urged the court erred in refusing defendant's instruction "B" which sought to tell the jury that if plaintiff did not send to defendant bank, with the drafts, an itemized statement of their account with Brecheisen, the verdict must be for defendant. The instruction, as we read it, was an attempt to have the court direct a verdict for defendant if itemized statements were not sent with the drafts to the bank; the contract is ambiguous as to whether the itemized statements were to be sent to the bank or to Brecheisen. This involves the construction of the language of the instrument sued on and is tantamount to a holding by the court that, as a matter of law, the statements must have been sent to the bank. The jury was required to pass upon this question. The ruling of the court was not error.

Appellant charges error in the refusal of defendant's instruction "D" which sought to withdraw from the consideration of the jury the draft for $1880.58, drawn August 27, 1924. We see no error in this refusal. There is testimony tending to show that this draft, as shown by the stipulation above set out, represented the total of four previous drafts adjusted to that date. The giving of such an instruction was without purpose. This ruling also applies to defendant's charge that the court erred in refusing defendant's instructions "G," "H" and "I" which sought to withdraw from the consideration of the jury the drafts drawn on October 26, October 29 and November 2, 1923. It appears to us that the only theory upon which the court could have given these instructions is that the first draft exhausted the authority of the letter in question. This position is

contrary to the wording of the letter. [28 C. J. 897, 958, 959; Bank v. Cole, 93 N. E. 465.]

Error is also directed against the action of the court in refusing defendant's instruction "K" which told the jury to find for defendant if the letter of guaranty was written by the cashier without authority of the board of directors. The refusal of this instruction clearly was proper, since it required no authority from the board of directors to write the letter which the court construed as a letter of credit.

Appellant also argues the court erred in admitting incompetent evidence, the basis for this charge being the following occurrence, shown of record, during the examination of Charles E. Simon, the cashier:

"Q. Has the bank ever lost any money since you have been there on loans to Mr. M. S. Brecheisen? . . . A. No, sir, not while I was there.

"Q. Mr. M. S. Brecheisen owns two farms, don't he? A. Yes, sir.

"Q. Do you know of any outstanding judgment against Mr. M. S. Brecheisen? . . . A. I don't know of any."

Defendant objected to each of these questions on the ground that they were immaterial and did not tend to prove or disprove any issues in the case, but only tended to mislead the jury, but the objections were overruled. The ruling of the court, doubtless, was upon the theory that the testimony bears directly on the probability of the defendant recovering from Brecheisen in the event of loss on this case. We think this ruling was error as the evidence was immaterial for any purpose.

Finally, it is urged the court erred in refusing competent evidence offered by defendant. This refers to the cross-examination by defendant of the witness Simon. He was asked if he, as an officer of the bank, had ever signed such a letter prior to the signing of the one in question. This was objected to as immaterial and the court sustained the objection. Then defendant offered to prove by the witness that he had never before written any such letter and that it was not written in the usual course of business.

This position is untenable for the sufficient reason that the instrument sued on, in effect, was a letter of credit, and in the regular course of business, banks may issue such letters regardless of custom, and the power to issue them is inherent and resides in the cashier. There was no error in this respect. For the error above noted, the judgment is reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.